SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

*Attorneys for Plaintiff Sydney Frederick-Osborn,
on behalf of herself and all others similarly situated*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| SYDNEY FREDERICK-OSBORN, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC., and X CORP.,<br><br>Defendants | Case No. 3:24-cv-125<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND**<br><br>1. DISCRIMINATION IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq.*<br>2. DISCRIMINATION IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, Gov. Code § 12900, *et seq.*<br>3. DISCRIMINATION IN VIOLATION OF THE ADEA, 29 U.S.C. § 621, *et seq.*<br>4. DISCRIMINATION IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, Gov. Code § 12900, *et seq.* |

## I. **INTRODUCTION**

1. Plaintiff Sydney Frederick-Osborn files this Class and Collective Action Complaint against Twitter, Inc. and X Corp. (collectively "Twitter"), on her own behalf and on behalf of other female Twitter employees, as well as older employees, who were constructively discharged from their jobs during the chaotic months following multi-billionaire Elon Musk's purchase of the company in late 2022.

2. Plaintiff brings claims of discrimination under Title VII, 42 U.S.C. § 2000e, *et seq.*, and (for employees who worked out of California) the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12900, *et seq.*, challenging the company's constructive termination of female employees and older employees who refused to agree to new working conditions designed to result in the culling of female employees from Twitter's workforce in the wake of Musk's acquisition of the company.

3. Plaintiff also files this Class and Collective Action Complaint against Twitter on her own behalf and on behalf of other Twitter employees age fifty (50) or older across the country who were constructively discharged from their jobs during the chaotic months after multi-billionaire Elon Musk purchased the company.

4. Plaintiff brings claims of discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), and (for employees who worked out of California) the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12900, *et seq.*, challenging the company's constructive termination of employees age fifty (50) or older who refused to agree to new working conditions designed to result in the culling of older employees from Twitter's workforce in the wake of Musk's acquisition of the company.

5. As described further below, shortly after Elon Musk completed his purchase of Twitter, he immediately began laying off more than half of its workforce.

6. The mass termination of employees at Twitter impacted female employees to a much greater extent than male employees – and to a highly statistically significant degree. Moreover, Musk has made a number of publicly discriminatory remarks about females, further confirming that the new policies at Twitter Musk implemented were intended to, and had the effect of, forcing more women to leave the company.

7. Likewise, the mass termination of employees at Twitter has impacted employees age fifty (50) or older to a greater extent than employees under the age of fifty (50) – and to a statistically significant degree. Moreover, Musk has made publicly discriminatory remarks about older people, so it is not surprising that he also quickly implemented new unreasonable work demands and policies at Twitter, which were intended to, and had the effect of, forcing out older employees.

8. Plaintiff files this action on her own behalf and on behalf of similarly situated individuals, bringing claims of sex and age discrimination.

## II.   PARTIES

9. Plaintiff Sydney Frederick-Osborn is an adult resident of San Francisco, California, where she worked for Twitter from June 2022 until November 2022. Dr. Frederick-Osborn was employed by Twitter as a Staff Software Engineer. Throughout her employment with Twitter, Dr. Frederick-Osborn's performance met the Company's expectations.

10. Plaintiff bring this lawsuit as a Rule 23 class action on behalf of all similarly situated female Twitter employees across the United States who were constructively discharged based on the heightened and unreasonable demands placed on the company's workforce since Elon Musk acquired the company.

11. Plaintiff Frederick-Osborne also brings this lawsuit as a collective action under the ADEA on behalf of all Twitter employees across the United States age fifty (50) or older

who have lost their jobs as a result of the implementation of the discriminatory policies, and as a Rule 23 class action for those employees who worked in California.

12. Defendant Twitter, Inc. is a Delaware corporation, headquartered in San Francisco, California.

13. Defendant X Corp. is a Nevada corporation, headquartered in San Francisco, California.

14. In or about March 2023, Twitter merged with X Corp., and as a result Twitter and X Corp. are a single entity. X Corp. has successor liability for Twitter's unlawful acts. Twitter and X Corp. are referred to herein as "Twitter".

## III. JURISDICTION

15. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5).

16. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims, because those claims derive from a common nucleus of operative facts with Plaintiff's federal claims.

17. This Court has personal jurisdiction over Twitter, as it is headquartered in this District and conducts substantial business operations in this District.

## IV. STATEMENT OF FACTS

18. Twitter is a social media company that used to employ thousands of people across the United States.

19. In April 2022, it was announced that multi-billionaire Elon Musk would be purchasing the company.

20. Following Elon Musk's purchase of Twitter in late October 2022, Musk immediately began a mass layoff that affected well more than half of Twitter's workforce. See Kate Conger, Ryan Mac, and Mike Isaac, Confusion and Frustration Reign as Elon Musk Cuts

4
CLASS AND COLLECTIVE ACTION COMPLAINT

Half of Twitter's Staff, NEW YORK TIMES (November 4, 2022), https://www.nytimes.com/2022/11/04/technology/elon-musk-twitter-layoffs.html; Kate Conger, Ryan Mac, and Mike Isaac, In Latest Round of Job Cuts, Twitter is said to Layoff at Least 200 Employees, NEW YORK TIMES (February 26, 2023), https://www.nytimes.com/2023/02/26/technology/twitter-layoffs.html; Ryan Morrison, Twitter 'lays off 10% of its global workforce' in Elon Musk's latest job cuts, TECHMONITOR (February 27, 2023, updated March 9, 2023) ("The Company's headcount is down 75%."), https://techmonitor.ai/policy/digital-economy/twitter-job-cuts-elon-musk.

21. The decisions regarding which employees would be laid off were made under extremely hurried circumstances, with little if any regard given to employees' job performance, qualifications, experience, and abilities.

22. Indeed, decisions regarding laying off thousands of employees were made in a period of just days after Musk's acquisition of the company.

23. After an initial wave of mass layoffs, widely circulated pictures of Twitter employees before and after the layoff raised observations about the stark contrast in the number of women who appeared to be employed at the company before and after Musk's acquisition. Rachna Manojkumar Dhanrajani, Curious case of Twitter's missing women: Before and after pictures shock the internet, Business Today (November 21, 2022), Curious case of Twitter's missing women: Before and after pictures of Twitter office shock the internet - BusinessToday; Kanishka Sarkar, Where have all the women gone from Elon Musk's Twitter? 'Before & after' office photos shock internet, CNBC (November 21, 2022), Where Have All The Women Gone From Elon Musk'S Twitter? 'Before & After' Office Photos Shock Internet (cnbctv18.com).

24. The data from these layoffs bear out these observations and demonstrate that this initial wave of layoffs was discriminatory towards women.

25. Older employees (those age 50 and over) were also statistically more likely to be chosen for layoff on in November than younger employees.

26. Yet even after this initial November wave of mass layoffs, Twitter persisted in its efforts to reduce the number of women and older workers from its ranks. Musk implemented a number of policies at the company that were intended to force out women and older workers and sent a message that women and older employees were no longer welcome at Twitter.

27. These policies included expectations that employees would work an unreasonable number of hours and an uncompromising directive that employees would be required to immediately work out of physical offices (despite the fact that Twitter had freely allowed remote work throughout the pandemic and even before that).

28. Following Musk's acquisition of the company, employees were reported to work 12 hour shifts, 7 days a week. Some employees were told: "The expectation is literally to work 24/7 to get this out." Some employees slept in Twitter offices while being required to work around the clock. Grace Dean, BUSINESS INSIDER, Twitter staff have been told to work 84-hour weeks and managers slept at the office over the weekend as they scramble to meet Elon Musk's Tight deadlines, reports say, (Nov. 1, 2022), https://www.businessinsider.com/elon-musk-twitter-staff-layoffs-long-hours-shifts-work-jobs-2022-11.

29. These demands occurred while the company was in the process of mass layoffs, thus signaling to employees that these extraordinary efforts were required in order to keep their jobs.

30. Musk would certainly have known that these policy changes and expectations would have a disproportionate impact on women, as well as force older employees out of the company.

31. On November 16, 2022, Musk sent the following email to remaining Twitter employees:

> Going forward, to build a breakthrough Twitter 2.0 and succeed in an increasingly competitive world, we will need to be extremely hardcore. This will mean working long hours at high intensity. Only exceptional performance will constitute a passing grade.
>
> Twitter will also be much more engineering-driven. Design and product management will still be very important and report to me, but those writing great code will constitute the majority of our team and have the greatest sway. At its heart, Twitter is a software and servers company, so I think this makes sense.
>
> If you are sure that you want to be part of the new Twitter, please click yes on the link below:
>
> [LINK]
>
> Anyone who has not done so by 5pm ET tomorrow (Thursday) will receive three months of severance.
>
> Whatever decision you make, thank you for your efforts to make Twitter successful.
>
> Elon

32. The ultimatum was intended to, and did, result in further layoffs. The ultimatum resulted in more women, including Dr. Frederick- Z:\Shared\LLR_Data\Data\CLASS ACTIONS\Twitter\!Twitter Sex Discrimination Case 2 - Frederick-Osborn\Drafts and Pleadings, leaving the company than men. Indeed, approximately 36% of remaining women left the company as a result of this ultimatum, while approximately 28% of men did.

33. The undertone of the policies and message from Twitter was also that it was prioritizing younger employees and was not welcoming to older employees.

34. Following Musk's ultimatum, Dr. Frederick-Osborn, who was in her late 50s at the time, felt she was no longer welcome at Twitter, given her sex and age. She felt that Musk's policies and messages seemed directed at maintaining a workforce that was largely young and male. As such, she did not click yes on the ultimatum link that Musk sent employees on November 16, 2022.

35. The next day, Dr. Frederick-Osborn was laid off.

36. The fact that more women than men were laid off and forced out of the company through constructive discharge since Musk's acquisition is not surprising given Musk's history of making sexist, demeaning, and hostile comments against women. Such comments show his discriminatory animus against women, and it is understandable that women would feel less welcome in the workplace under his leadership. As Twitter's new owner and CEO, Musk's discriminatory animus is imputed to Twitter.

37. Examples of Musk's discriminatory and demeaning comments about women include his posting of tweets on Twitter in which he joked about naming a school using the acronym "TITS" and making other jokes about women's breasts. See Chandra Steele, Elon Musk is a Misogynist and It Matters, PCMag (December 13, 2021), Elon Musk Is a Misogynist and It Matters | PCMag (quoting Musk's tweet: "Am thinking of starting new university: Texas Institute of Technology & Science"); Jon Christian, Elon Musk Deletes Sexist Tweets, The Byte (October 31, 2021), Elon Musk Deletes Sexist Tweets (futurism.com); Stock Joker on Twitter: "@ZJAyres @PhilKoopman Now deleted, but only D cups need apply https://t.co/40NBcDTonb" / Twitter); Ananya Bhattacharya, In one tweet, Elon Musk captures the everyday sexism faced by women in STEM, Quarz (November 1, 2021), Elon Musk's tweet captures everyday sexism faced by women in STEM (qz.com).

38. Shortly before acquiring Twitter, Musk, who has been vocal about promoting women having a lot of babies (presumably disseminating the message that is more important than keeping their jobs), tweeted: "Being a Mom is just as important as any career." Twitter (August 17, 2022), https://twitter.com/elonmusk/status/1559823434028400640. Within weeks of announcing the layoffs, Musk tweeted "Testosterone rocks ngl". Twitter (December 4, 2022), https://twitter.com/elonmusk/status/1599345615443746817

39. Later, Musk had the "w" on the sign of the corporate headquarters painted white so that the company's name appeared to be "Titter." See Twitter (April 9, 2023), https://twitter.com/elonmusk/status/1645266104351178752?cxt=HHwWgIC-7cGzlNUtAAAA.

40. Similarly, the fact that older employees were laid off in greater proportion than younger employees, and many older employees were forced out of the company after Musk's acquisition, is not surprising given Musk's history of making ageist comments. Such comments show his discriminatory animus against older individuals, and it is understandable that older employees would feel less welcome in the workplace under his leadership. As Twitter's new owner and CEO, who oversaw and closely managed the employees who were making layoff decisions and implementing his policies, Musk's discriminatory animus is imputed to Twitter.

41. For example, in a 2022 interview with the CEO of the publishing company Axel Springer, Musk commented:

> I don't think we should try to have people live for a really long time. That it would cause asphyxiation of society because the truth is, most people don't change their mind, …they just die. So, if they don't die, we will be stuck with old ideas and society wouldn't advance . . . [a]nd it is just impossible to stay in touch with the people if you are many generations older than them.

https://www.foxbusiness.com/lifestyle/lonely-elon-musk-humans-shouldnt-live-longer-asphyxiate-society.

## V. EXHAUSTION OF ADMINSTRATIVE REMEDIES

42. Plaintiff Frederick-Osborn filed an administrative charge of sex discrimination under Title VII and age discrimination under the ADEA with the Equal Employment Opportunity Commission and under the California Fair Employment and Housing Act with the California Civil Rights Department.

## COUNT I

### Title VII
### 42 U.S.C. § 2000e, *et seq.*

Plaintiff and other female employees have been entitled to the protections of Title VII, 42 U.S.C. § 2000e, *et seq.*, which prohibits discrimination on the basis of sex. Twitter's conduct in implementing policies that intentionally (or unintentionally) affected and forced out a higher proportion of women than men, and that led to more women leaving the company, constitutes unlawful discrimination against Plaintiff and other similarly situated female Twitter employees on the basis of sex in violation of Title VII.

## COUNT II

### California Fair Employment and Housing Act
### Gov. Code § 12900, *et seq.*
### (Sex Discrimination)

Plaintiff and other female employees have been entitled to the protections of the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12900, *et seq.* Twitter's conduct in implementing policies that intentionally (or unintentionally) affected and forced out a higher proportion of women than men, and that led to more women leaving the company, constitutes unlawful discrimination against Plaintiff and other similarly situated female Twitter employees who worked in California on the basis of sex in violation of the FEHA.

## COUNT III

### Age Discrimination in Employment Act
### 29 U.S.C. § 621

Plaintiff and other older employees are entitled to the protections of the ADEA, 29 U.S.C. § 621, which prohibits discrimination on the basis of age. Twitter's conduct in implementing policies that intentionally (or unintentionally) affected and forced out older employees (aged 50 and older), and that led to employees aged 50 and older leaving the company, constitutes

unlawful discrimination against Plaintiff and other similarly situated Twitter employees on the basis of age in violation of the ADEA.

## COUNT IV

**California Fair Employment and Housing Act**
**Gov. Code § 12900,** *et seq.*
**(Age Discrimination)**

Plaintiff and other employees age fifty (50) and older have been entitled to the protections of the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12900, *et seq.* Twitter's conduct in implementing policies that intentionally (or unintentionally) affected and forced out older employees (aged 50 and older), and that led to employees aged 50 and older leaving the company, constitutes unlawful discrimination against Plaintiff and other similarly situated Twitter employees who worked in California on the basis of age in violation of the FEHA.

## JURY DEMAND

Plaintiff requests a trial by jury on the claims asserted here.

WHEREFORE, Plaintiff requests that this Court enter the following relief:

a. Certify this case as a class action under Title VII and the Fair Employment and Housing Act;

b. Certify this case as a collective action under the ADEA;

c. Declare and find that Defendants are liable to Plaintiff and other similarly situated female employees under Title VII, 42 U.S.C. § 2000e, *et seq.*, and, with respect to employees who have worked out of California, the Fair Employment and Housing Act, Gov. Code § 12900, *et seq.*;

d. Declare and find that Defendants are liable to Plaintiff and other similarly situated older employees whose rights are protected under the ADEA, 29 U.S.C. § 621, and, with respect to employees who have worked out of California, the Fair Employment and Housing Act, Gov. Code § 12900, *et seq.*;

e. Reinstate female and older employees who wish to return to their jobs;

f. Award compensatory and any other appropriate damages, including emotional distress and punitive damages under Title VII and the Fair Employment and Housing Act;

g. Award liquidated damages under the ADEA;

h. Award pre- and post-judgment interest;

i. Award reasonable attorneys' fees, costs, and expenses; and

j. Award any other relief to which Plaintiff and other similarly situated employees may be entitled.

Dated: January 5, 2024            Respectfully submitted,

SYDNEY FREDERICK-OSBORN, on behalf of herself and all others similarly situated,

By her attorneys,

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com; tfowler@llrlaw.com

12
CLASS AND COLLECTIVE ACTION COMPLAINT