1   MORGAN, LEWIS & BOCKIUS LLP
    Eric Meckley, Bar No. 168181
2   eric.meckley@morganlewis.com
    Brian D. Berry, Bar No. 229893
3   brian.berry@morganlewis.com
    Roshni C. Kapoor, Bar No. 310612
4   roshni.kapoor@morganlewis.com
    One Market, Spear Street Tower
5   San Francisco, CA  94105-1596
    Tel:     +1.415.442.1000
6   Fax:     +1.415.442.1001

7   MORGAN, LEWIS & BOCKIUS LLP
    Ashlee N. Cherry, Bar No. 312731
8   ashlee.cherry@morganlewis.com
    Kassia Stephenson, Bar No. 336175
9   kassia.stephenson@morganlewis.com
    1400 Page Mill Road
10  Palo Alto, CA  94304
    Tel:     +1.650.843.4000
11  Fax:     +1.650.843.4001

12  Attorneys for Defendant
    X CORP. f/k/a TWITTER, INC.
13

14

15                 UNITED STATES DISTRICT COURT

16                 NORTHERN DISTRICT OF CALIFORNIA

17                      OAKLAND DIVISION

18

19   SYDNEY FREDERICK-OSBORN, on behalf       Case No. 4:24-CV-00125-KAW
     of herself and all others similarly situated,
20                                            **DEFENDANT X CORP. F/K/A**
                          Plaintiff,          **TWITTER, INC.'S NOTICE OF**
21                                            **MOTION AND MOTION TO DISMISS**
                    vs.                       **PLAINTIFF'S COMPLAINT;**
22                                            **MEMORANDUM OF POINTS AND**
     TWITTER, INC. and X CORP.,               **AUTHORITIES IN SUPPORT**
23                                            **THEREOF**
                          Defendants.
24                                            Date:      March 21, 2024
                                              Time:      1:30 p.m.
25                                            Judge:     Hon. Kandis A. Westmore

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW

1    **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2    **PLEASE TAKE NOTICE** that on March 21, 2024, at 1:30 p.m. or as soon thereafter as

3    may be heard via Zoom videoconference before the Honorable Kandis A. Westmore, Defendant

4    X Corp. formerly known as Twitter, Inc. will, and hereby does, move this Court pursuant to Fed.

5    R. Civ. P. 12(b)(6) for an order dismissing the Complaint for failure to state a claim upon which

6    relief can be granted based on the following grounds:

7    1.    Plaintiff's first and second causes of action for discrimination in violation of Title

8    VII, 42 U.S.C. § 2000e, *et seq.* and the California Fair Employment and Housing Act, Gov. Code

9    § 12900, *et seq.* fail to state a claim because Plaintiff does not allege facts sufficient to support a

10   plausible disparate treatment claim.

11   2.    Plaintiff's first and second causes of action for discrimination in violation of Title

12   VII, 42 U.S.C. § 2000e, *et seq.* and the California Fair Employment and Housing Act, Gov. Code

13   § 12900, *et seq.* fail to state a claim because Plaintiff does not allege facts sufficient to support a

14   plausible disparate impact claim.

15   3.    Plaintiff's first and second causes of action for discrimination in violation of the

16   Age Discrimination in Employment Act, 29 U.S.C. § 621, and the California Fair Employment

17   and Housing Act, Gov. Code § 12900, *et seq.* fail to state a claim because Plaintiff does not allege

18   facts sufficient to support a plausible disparate treatment claim.

19   4.    Plaintiff's first and second causes of action for discrimination in violation of the

20   Age Discrimination in Employment Act, 29 U.S.C. § 621, and the California Fair Employment

21   and Housing Act, Gov. Code § 12900, *et seq.* fail to state a claim because Plaintiff does not allege

22   facts sufficient to support a plausible disparate impact claim.

23   The Motion to Dismiss is based on this Notice of Motion, the Memorandum of Points and

24   Authorities, the pleadings on file herein and such arguments and admissible evidence as may be

25   presented at the time of hearing.

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW

1    Dated: February 8, 2024                    MORGAN, LEWIS & BOCKIUS LLP

2

3                                          By   /s/ Brian D. Berry
                                                Eric Meckley
4                                               Brian D. Berry
                                                Roshni C. Kapoor
5                                               Ashlee N. Cherry
                                                Kassia Stephenson
6                                               Attorneys for Defendant
                                                TWITTER, INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO                                3                TWITTER'S NOTICE OF MOTION AND
                                                                     MOTION TO DISMISS
                                                             CASE NO. 4:24-CV-00125-KAW

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.   RELEVANT FACTUAL BACKGROUND ........................................................ 2

    A.   The Allegations About Plaintiff ............................................................ 2

    B.   The Allegations About Purported Discriminatory Animus ................... 2

    C.   Plaintiff's Putative Class Claims .......................................................... 4

III.   LEGAL STANDARD ........................................................................................ 4

    A.   Legal Standard for Motion to Dismiss Under Rule 12(b)(6). ............... 4

IV.   ARGUMENT ..................................................................................................... 5

    A.   Plaintiff Fails to State a Claim for Intentional Discrimination on the Basis of Sex. .......................................................................................... 5

        1.   The Complaint Contains No Facts to Support an Inference that Plaintiff's Sex Was a Motivating Factor in X's Decision to Implement the Alleged Policies that Purportedly Constituted a "Constructive Termination." .................................................. 6

        2.   Plaintiff Fails to Allege that Twitter Engaged in a Pattern or Practice of Sex Discrimination. ................................................ 8

            a.   Plaintiff Does Not Allege that Sex Discrimination Was "a Routine and Regular Part" of Twitter's Workplace. ....................... 9

            b.   Neither Plaintiff's Statistics Nor Her Anecdotal Evidence Support an Inference of Intentional Sex Discrimination ................ 9

    B.   Plaintiff Fails to State a Disparate Impact Claim Based on Sex. .......... 11

    C.   Plaintiff Fails to State a Claim for Intentional Age Discrimination ...... 13

        1.   The Complaint Contains No Facts to Support an Inference that X Would Not Have Constructively Terminated Plaintiff But For Her Age. ............................................................................. 13

        2.   Plaintiff Fails to Allege that X Engaged in a Pattern or Practice of Age Discrimination. ............................................... 14

    D.   Plaintiff Fails to State a Claim for Disparate Impact Based on Age ..... 16

V.   CONCLUSION ................................................................................................. 17

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Fed'n of State, Cnty., & Mun. Emps. v. Washington,*
    770 F.2d 1401 (9th Cir. 1985) ............................................................................ 6, 10

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................................................... 4

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................... 4, 5, 13, 17

*Brooks v. City of San Mateo,*
    229 F.3d 917 (9th Cir. 2000) .............................................................................. 6, 13

*Cherosky v. Henderson,*
    330 F.3d 1243 (9th Cir. 2003) .................................................................................. 8

*Cornwell v. Electra Cent. Credit Union,*
    439 F.3d 1018 (9th Cir. 2006) .................................................................................. 6

*Cozzi v. County of Marin,*
    787 F.Supp.2d 1047 (N.D. Cal. Apr. 18, 2011) ................................................... 15

*Criley v. Delta Air Lines, Inc.,*
    119 F.3d 102 (2d Cir. 1997) ................................................................................... 16

*E.E.O.C. v. McDonnell Douglas Corp.,*
    191 F.3d 948 (8th Cir. 1999) ................................................................................. 16

*EEOC v. Bloomberg L.P.,*
    778 F. Supp. 2d 458 (S.D.N.Y. 2011) .............................................................. 11, 13

*Fresquez v. County of Stanislaus,*
    2014 WL 1922560 (E.D. Cal. May 14, 2014) .................................................... 7, 14

*Freyd v. University of Oregon,*
    990 F.3d 1211 (9th Cir. 2021) ................................................................................ 11

*Gay v. Waiters' & Dairy Lunchmen's Union, Loc. No. 30,*
    694 F.2d 531 (9th Cir. 1982) ............................................................................... 9, 10

*Gross v. FBL Fin. Servs., Inc.,*
    557 U.S. 167 (2009) ................................................................................................. 14

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Hazelwood Sch. Dist. v. United States*,
   433 U.S. 299 (1977) ......................................................................................... 9

4

5

*Hazen Paper Co. v. Biggins*,
   507 U.S. 604 (1993) ......................................................................................... 6

6

*Int'l Bhd. Of Teamsters v. U.S.*,
   431 U.S. 324 (1977) ............................................................................. 8, 9, 10, 11

7

8

*Jones v. Lewis*,
   2020 WL 6149693 (N.D. Cal. Oct. 20, 2020) .................................................. 11

9

10

*Kinnally v. Rogers Corp.*,
   2009 WL 597211 (D. Ariz. Mar. 9, 2009) ....................................................... 16

11

*Liu v. Uber Technologies Inc.*,
   551 F.Supp.3d 988 (N.D. Cal. 2021) ............................................................... 11

12

13

*Lowe v. Commack Union Free Sch. Dist.*,
   886 F.2d 1364 (2d Cir. 1989) ........................................................................... 16

14

*Maybin v. Hilton Grand Vacations Co., LLC*,
   343 F.Supp.3d 988 (D. Haw. Sept. 28, 2018) .................................................. 15

15

16

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ......................................................................................... 6

17

18

*Meacham v. Knolls Atomic Power Lab.*,
   554 U.S. 84 (2008) ........................................................................................... 12

19

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008) .......................................................................... 5

20

21

*Merrick v. Farmers Ins. Group*,
   892 F.2d 1434 (9th Cir. 1990) .......................................................................... 14

22

23

*Mish v. TForce Freight, Inc.*,
   2021 WL 4592124 (N.D. Cal. Oct. 6, 2021) .................................................... 5

24

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ............................................................................ 4

25

26

*Nidds v. Schindler Elevator Corp.*,
   113 F.3d 912 (9th Cir. 1996) ............................................................................ 15

27

28

-iii-

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Obrey v. Johnson,*
400 F.3d 691 (9th Cir. 2005)..................................................................................... 8

4

*Penn. State Police v. Suders,*
542 U.S. 129 (2004) ..................................................................................................... 7

5

6

*Personnel Adm'r of Massachusetts v. Feeney,*
442 U.S. 256 (1979), aff'd, 678 F.3d 1075 (9th Cir. 2012) ...................................... 6

7

8

*Poland v. Chertoff,*
494 F.3d 1174 (9th Cir. 2007)............................................................................. 6, 13

9

*Pottenger v. Potlach Corp.,*
329 F.3d 740 (9th Cir. 2003).................................................................................... 2

10

11

*Ricci v. DeStefano,*
557 U.S. 557 (2009) .................................................................................................. 5

12

13

*Rudwall v. Blackrock, Inc.,*
2011 WL 767965 (N.D. Cal. Feb. 28, 2011)........................................................ 17

14

*Schechner v. CBS Broad., Inc.,*
2010 WL 2794374 (N.D. Cal. July 15, 2010) ...................................................... 9

15

16

*Schechner v. KPIX-TV,*
2011 WL 109144 (N.D. Cal. Jan. 13, 2011) ...................................................... 16

17

18

*Smith v. City of Jackson,*
544 U.S. 228 (2005)................................................................................................ 12

19

*Smith v. Tennessee Valley Auth.,*
924 F.2d 1059 (6th Cir. 1991).............................................................................. 16

20

21

*In re Stac Elecs. Sec. Litig.,*
89 F.3d 1399 (9th Cir. 1996).................................................................................. 5

22

23

*Starr v. Baca,*
652 F.3d 1202 (9th Cir. 2011)................................................................................. 5

24

25

*Stockwell v. City & Cty. of San Francisco,*
749 F.3d 1107 (9th Cir. 2014)........................................................................... 6, 12

26

*Stout v. Potter,*
276 F.3d 1118 (9th Cir. 2002)........................................................................... 12, 17

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-iv-                    TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Strifling v. Twitter, Inc.*
  (N.D. Cal. Case No. 22-cv-07739-JST) ............................................................*passim*

*Texas Dept. of Housing & Community Affairs v. Inclusive Communities Project, Inc.,*
  576 U.S. 519 (2015) ......................................................................................... 11

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*
  429 U.S. 252 (1977) ........................................................................................... 9

*Vizcaino v. Areas USA, Inc.,*
  2015 WL 13573816 (C.D. Cal. Apr. 17, 2015) ............................................. 7, 14

*W. Mining Council v. Watt,*
  643 F.2d 618 (9th Cir. 1981) ............................................................................. 5

*Wards Cove Packing Co. v. Atonio,*
  490 U.S. 642 (1989) .......................................................................................... 12

*Watson v. Fort Worth Bank & Tr.,*
  487 U.S. 977 (1988) ............................................................................................ 5

*Wood v. City of San Diego,*
  2010 WL 2382335 (S.D. Cal. June 10, 2010) ................................................... 6

*Wood v. City of San Diego,*
  678 F.3d 1075 (9th Cir. 2012) ...................................................................... 6, 11

*Wynes v. Kaiser Permanente, Hosps.,*
  936 F. Supp. 2d 1171 (E.D. Cal. 2013) .............................................................. 5

*Zamora v. Penske Truck Leasing Co., L.P.,*
  2021 WL 809403 (C.D. Cal. Mar. 3, 2021) ....................................................... 5

*Zeman v. Twitter, Inc.,*
  2023 WL 5599609 (N.D. Cal. Aug. 29, 2023) ............................................ 1, 17

**Statutes**

ADEA, 29 U.S.C. § 621 ....................................................................... 4, 14, 16, 17

Civil Rights Act of 1964 Title VII ......................................................... 4, 5, 6

Fed. R. of Civ. P. Rule 12(b)(6) ............................................................ 4, 5, 11

FEHA ........................................................................................................... 4, 5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

–v–

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW

## I.     INTRODUCTION

Plaintiff Sydney Frederick-Osborn is a former employee of Twitter, Inc., predecessor in interest to X Corp. ("X" or "Twitter").  Plaintiff voluntarily resigned from X when she declined to click "yes" in response to Elon Musk's November 16, 2022 email that presented employees with a choice of either remaining employed (and agreeing to "work[] long hours at high intensity") or resigning.  Plaintiff contends that this email, along with X's November 9, 2022 return-to-office directive, discriminated against her and other female employees, as well as employees aged 50 and older.  On that basis, Plaintiff asserts putative collective and class action claims for sex discrimination and age discrimination under federal and California law.[1]

Plaintiff's complaint hinges on her theory that X's alleged policy of requiring long hours of intense work from the office amounted to a mass constructive discharge of women and older workers.  She asks the Court to draw an inference of constructive discharge based solely on her subjective perception and feelings.  According to the Complaint, X constructively discharged her because "[s]he felt she was no longer welcome at Twitter, given her sex and age.  She felt that Musk's policies and messages seemed directed at maintaining a workforce that was largely young and male."  Compl., ¶ 34.  But those allegations fall well short of the kind of extraordinary and egregious working conditions that are necessary to establish a constructive discharge.

The Complaint is replete with conclusory statements that Musk implemented the alleged policies in order to force women and older workers out of the company, but it fails to allege any facts that warrant a plausible inference of sex-based or age-based discriminatory animus.  She alleges that 36% of women chose to resign in response to Musk's email compared to 28% of men.  But this bottom-line statistic is insufficient to state a claim for sex discrimination under a disparate impact theory, and Plaintiff does not allege any facts at all suggesting that Musk's email or the return-to-office adversely impacted older workers.

---

[1] Notably, Plaintiff's Complaint is an amalgamation of the failed sex discrimination Complaint in *Strifling v. Twitter, Inc.* (N.D. Cal. Case No. 22-cv-07739-JST), another putative class action brought by Plaintiff's counsel of record that Judge Tigar dismissed, as well as the Complaint in *Zeman v. Twitter, Inc.* (N.D. Cal. Case No. 3:23-cv-01786-SI), an age discrimination class action brought by Plaintiff's counsel of record that Judge Ilston dismissed in part.  *See* Request for Judicial Notice ("RJN"), Exs. 1 and 2.

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW

1    At bottom, Plaintiff fails to plead any plausible claim for relief.  The Court should grant

2    X's motion and dismiss the Complaint in its entirety.

3    **II.    RELEVANT FACTUAL BACKGROUND**

4        **A.    The Allegations About Plaintiff**

5    Plaintiff Sydney Frederick-Osborn is a former Staff Software Engineer who worked at

6    Twitter, Inc., predecessor in interest to X Corp., for five months, from June 2022 until November

7    2022.  Compl., ¶ 9.  Plaintiff is a woman over the age of 50.  *Id.*, ¶ 34.

8        Plaintiff asserts that following Musk's acquisition of X, "Musk implemented a number of

9    policies at the company that were intended to force out women and older workers and sent a

10   message that women and older employees were no longer welcome at Twitter."  *Id.*, ¶ 26.

11   Specifically, Plaintiff alleges that "[t]hese policies included expectations that employees would

12   work an unreasonable number of hours and an uncompromising directive that employees would be

13   required to immediately work out of physical offices[.]"  *Id.*, ¶ 27.  Plaintiff alleges that these "Post-

14   RIF Policies" culminated with an "ultimatum" that Musk sent to all remaining Twitter employees

15   on November 16, 2022 asking them to commit to "working long hours at high intensity"

16   (hereinafter the "Fork in the Road Email").  *Id.*, ¶ 31.  Any employee that declined to do so would

17   receive three months of severance.  *Id.*  Plaintiff alleges that this "ultimatum" made her "fe[el] she

18   was no longer welcome at Twitter, given her sex and age."  *Id.*, ¶ 34.  Plaintiff further alleges that

19   "[s]he felt that Musk's policies and messages seemed directed at maintaining a workforce that was

20   largely young and male."  *Id.*  Accordingly, Plaintiff "did not click yes on the ultimatum link that

21   Musk sent employees on November 16, 2022."  *Id.*  Plaintiff characterizes her voluntary resignation

22   as both a "layoff" and a "constructive discharge."  *Id.*, ¶¶ 35-36.

23       **B.    The Allegations About Purported Discriminatory Animus**

24       Although Plaintiff was not selected by Twitter for separation in the November 4 reduction

25   in force ("RIF"), she alleges that both the RIF and the Fork in the Road Email disproportionately

26   affected female employees.[2]  *Id.*, ¶¶ 24, 32.  Plaintiff alleges that "[t]he data from [the] layoffs . . .

---

[2] To the extent that Plaintiff seeks to challenge the RIF, she lacks standing to do so.  RJN, Ex. 1
(*Strifling* Order at 13, n. 9) (holding that the plaintiffs did not have standing to challenge X's Post-
RIF Policies because they were not subject to them) (citing *Pottenger v. Potlach Corp.,* 329 F.3d

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO                                                    2                    TWITTER'S NOTICE OF MOTION AND
                                                                                        MOTION TO DISMISS
                                                                                        CASE NO. 4:24-CV-00125-KAW

1    demonstrate[s] that this initial wave of layoffs was discriminatory towards women." *Id.*, ¶ 24.

2    Plaintiff further alleges that "approximately 36% of remaining women left the company as a result

3    of [the] ultimatum, while approximately 28% of men did." *Id.*, ¶ 32.

4         Plaintiff concludes, without any factual or statistical support, that "[o]lder employees (those

5    age 50 and over) were also statistically more likely to be chosen for layoff [] in November than

6    younger employees." *Id.*, ¶ 25.  Plaintiff further alleges that "[t]he undertone of the policies and

7    message from Twitter was also that it was prioritizing younger employees and was not welcoming

8    to older employees." *Id.*, ¶ 33.  Plaintiff offers no data in support of these conclusions.

9         Plaintiff alleges that "Musk would certainly have known that these policy changes and

10   expectations would have a disproportionate impact on women, as well as force older employees

11   out of the company." *Id.*, ¶ 30.  Plaintiff offers no factual support for this conclusion and instead

12   points to Musk's purported "history of making sexist, demeaning, and hostile comments against

13   women" as well as "ageist comments." *Id.*, ¶¶ 36-41.  Plaintiff stretches to construe several of

14   Musk's tweets and comments as reflecting gender animus, including a joke he made prior to the

15   acquisition about breasts, a tweet that "Testosterone rocks [not going to lie]," and a tweet praising

16   the value of motherhood. *Id.*, ¶¶ 37-38.  She also alleges that Musk removed the "w" on the

17   corporate headquarters sign, so that it read "Titter." *Id.*, ¶ 39.  Notably, Plaintiff does not allege

18   any gender-based animus directed towards her or any other Twitter employee, or any alleged

19   comments by Musk or any Twitter manager tied to the Post-RIF Policies.

20        Similarly, the Complaint provides a single example of purported age-based discriminatory

21   animus.  In a media interview from March 2022—more than seven months before the RIF—Musk

22   reportedly said that he "doesn't believe humans should live for longer":

23        I don't think we should try to have people live for a really long time.  That it would
          cause asphyxiation of society because the truth is, most people don't change their
24        mind, … they just die.  So, if they don't die, we will be stuck with old ideas and
          society wouldn't advance … [a]nd it is just impossible to stay in touch with the
25        people if you are many generations older than them.

26   *Id.*, ¶ 41; RJN, Ex. 3 (Fox Business article, pp. 1-2).  Musk made this statement in a

27

28   740, 750 (9th Cir. 2003) (explaining in the disparate impact context that "[a plaintiff] must show
     that [they were] subject to the particular employment practice" that they are challenging)).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW

discussion about "declining birthrate" and human "longevity" as possible "threat[s] to the future of civilization," the "proper[]" functioning of "democracy," and how he himself is "not afraid of dying." *Id.* at p. 2. The interview contains no comments about Musk's views about workers age 50 and over (which Musk himself is) or about employment practices at X, a company that he did not acquire until months later. Plaintiff provides no nexus between Musk's human-longevity comments and the Post-RIF Policies that Plaintiff challenges here.

### C.   Plaintiff's Putative Class Claims

Plaintiff asserts class claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the California Fair Employment and Housing Act ("FEHA") on behalf of "all similarly situated female Twitter employees … who were constructively discharged based on the heightened and unreasonable demands placed on the company's workforce since Elon Musk acquired the company." *Id.*, ¶ 10. Plaintiff also asserts collective claims under the ADEA, 29 U.S.C. § 621 and class claims under FEHA "on behalf of all Twitter employees … age fifty (50) or older who have lost their jobs as a result of the implementation of the discriminatory policies." *Id.*, ¶ 11.

## III.   LEGAL STANDARD

### A.   Legal Standard for Motion to Dismiss Under Rule 12(b)(6).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint's allegations. A court must dismiss a claim unless the complaint articulates "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). The "plausibility standard is not akin to a 'probability requirement,' but rather, it asks for more than a sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556-57). A complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("[B]are assertions . . . amounting to nothing more than a 'formulaic recitation of the elements'" of a claim "are not entitled to an assumption of truth") (quoting *Iqbal*, 556 U.S. at 681). Therefore, the Court may not "assume the truth of legal conclusions merely because they are cast in the form of factual

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW

1   allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *In re Stac Elecs. Sec.*
2   *Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (holding that "[c]onclusory allegations of law and
3   unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").

4       The Court considers whether the pleading's "factual content . . . allows the court to draw
5   the reasonable inference that the defendant is liable for the misconduct alleged," such that "it is not
6   unfair to require the opposing party to be subjected to the expense of discovery and continued
7   litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Dismissal is required when a
8   complaint lacks a cognizable legal theory or fails to allege facts sufficient to support a cognizable
9   legal theory.  *Twombly*, 550 U.S. at 555; *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097,
10  1104 (9th Cir. 2008); Fed. R. Civ. P. 12(b)(6).

11      In a putative class action, the plausibility standard under *Twombly* applies not only to the
12  named plaintiff's individual claims, but also to the class claims.  *See, e.g., Mish v. TForce Freight,*
13  *Inc.*, 2021 WL 4592124, at *8 (N.D. Cal. Oct. 6, 2021) (dismissing class claims under *Twombly*
14  standard); *Zamora v. Penske Truck Leasing Co., L.P.*, 2021 WL 809403, at *3 (C.D. Cal. Mar. 3,
15  2021) (dismissing class claims because "Plaintiffs do not assert any factual support for their class
16  allegations . . . Plaintiffs cannot point to a fish in the surf to force Defendant on a deep-sea charter
17  [of class discovery]").

18  **IV.   ARGUMENT**

19      **A.   Plaintiff Fails to State a Claim for Intentional Discrimination on the Basis of**
20         **Sex.**

21      Disparate treatment occurs "where an employer 'treat[s a] particular person less favorably
22  than others because of a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (quoting
23  *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 985-986 (1988)).  To state a disparate treatment
24  claim, a plaintiff must allege that "the defendant had a discriminatory intent or motive" in taking
25  some employment-related action against them.[3] *Watson v. Forth Worth Bank & Tr.*, 487 U.S. 977,
26  985-86 (1988).  Indeed, "the crux of a disparate treatment case is the subjective *motivation* for an

---

[3] "Discrimination under FEHA and Title VII is proven using the same factors." *Wynes v. Kaiser Permanente, Hosps.*, 936 F. Supp. 2d 1171, 1192 (E.D. Cal. 2013).

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW

adverse employment decision." *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1115, n.4 (9th Cir. 2014) (emphasis in original); *see also Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993) (liability in a disparate-treatment case "depends on whether the protected trait … actually motivated the employer's decision"); *see also Wood v. City of San Diego*, 2010 WL 2382335, at *6 (S.D. Cal. June 10, 2010) (a plaintiff "must establish that the defendant implemented the policy 'because of, not merely in spite of,' its adverse effects on the protected group") (quoting *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979), aff'd, 678 F.3d 1075 (9th Cir. 2012)). Thus, "[i]t is insufficient for a plaintiff alleging discrimination under the disparate treatment theory to show the employer was merely aware of the adverse consequences the policy would have on a protected group." *Wood v. City of San Diego,* 678 F.3d 1075, 1081 (9th Cir. 2012) (quoting *Am. Fed'n of State, Cnty., & Mun. Emps. v. Washington*, 770 F.2d 1401, 1405 (9th Cir. 1985)).

1.  <u>The Complaint Contains No Facts to Support an Inference that Plaintiff's Sex Was a Motivating Factor in X's Decision to Implement the Alleged Policies that Purportedly Constituted a "Constructive Termination."</u>

"To establish a prima facie case under Title VII, a plaintiff must offer proof: (1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Plaintiff alleges that the implementation of the Post-RIF Policies constituted a "constructive discharge" because it made her "feel" that she was no longer welcome at Twitter. *See, e.g.,* Compl., ¶ 34.  But a constructive discharge requires conditions that are "sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job and earn a livelihood . . ." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000); *see also Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (explaining that the constructive discharge doctrine sets a "high bar" that is met only when "working conditions become so intolerable that a reasonable person in the employee's positions would have felt compelled to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW

resign") (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004)).

The Complaint is woefully insufficient to support an inference of constructive discharge. It alleges only that X's expectation was that employees would be "extremely hardcore" and "work[] long hours at high intensity" in the office and not from home and that these working conditions made Plaintiff feel "no longer welcome at Twitter, given her sex[.]" Compl., ¶¶ 27, 34.[4] Those allegations do not come close to supporting an inference of "intolerable" or "extraordinary and egregious" working conditions. Lest there be any doubt, the Complaint itself admits that a significant majority of X employees (men and women) decided to continue their employment under the Post-RIF Policies, *see* Compl., ¶ 32, which undermines any plausible suggestion that the Post-RIF Policies constituted a constructive discharge, let alone a constructive discharge that treated men and women differently. And even if Plaintiff's subjective feelings were sufficient to state an individual claim, which they are not, they are plainly insufficient to support a class claim.

The Complaint also fails to state a claim because it does not allege facts suggesting that Plaintiff was performing her job satisfactorily. Indeed, the Complaint contains only a single allegation that concludes, without any factual support, that "[t]hroughout her employment with Twitter, Dr. Frederick-Osborn's performance met the Company's expectations." *See* Compl., ¶ 9. This generic allegation does not satisfy the pleading standard for a discrimination claim. *See, e.g., Vizcaino v. Areas USA, Inc.*, 2015 WL 13573816, at *4 (C.D. Cal. Apr. 17, 2015) (dismissing discrimination claim because plaintiff "merely includes conclusory allegations . . . that he was performing his job competently, without offering any facts in support of that conclusion"); *Fresquez v. County of Stanislaus,* 2014 WL 1922560, at *5 (E.D. Cal. May 14, 2014) (dismissing discrimination claim because plaintiff's "threadbare assertion that she was competent to perform her duties" was insufficient to state claim); RJN, Ex. 1 (*Strifling* Order at 8) (dismissing gender discrimination claim against Twitter for failure to allege satisfactory job performance).

In addition, the Complaint does not allege any facts about the comparative qualifications,

---

[4] Although Plaintiff claims that "some" employees were allegedly told they needed to "literally work 24/7" to meet imminent deadlines, the Complaint does not allege that working around the clock every day was a new policy, let alone for the entire workforce, or that it was applicable to Plaintiff specifically. Compl., ¶ 28.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW

job performance, or abilities of male employees who worked in substantially similar positions and were not "constructively discharged." *See generally* Compl. Plaintiff's disparate treatment claim must therefore fail because the Complaint is "devoid of basic information" that suggests a "plausible link between [her "constructive discharge"] and the fact that [she is a] woman." *See* RJN, Ex. 1 (*Strifling* Order at 7) (dismissing sex-based disparate treatment claim against Twitter related to the RIF for several reasons, including that plaintiffs "do not … allege that they were performing satisfactorily in [their job] positions. Thus, they are unable to allege that similarly situated men were not laid off during the RIF. . .").

### 2. Plaintiff Fails to Allege that Twitter Engaged in a Pattern or Practice of Sex Discrimination.

A plaintiff can state a claim for intentional discrimination under a "pattern or practice" theory when the allegations suggest that discrimination "was the company's ***standard operating procedure.***" *Int'l Bhd. Of Teamsters v. U.S.*, 431 U.S. 324, 336 (1977) (emphasis added). A plaintiff must plead "more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." *Id.* Rather, the allegations must suggest that discrimination is "the regular rather than the unusual practice" and is "repeated, routine, or of a generalized nature." *Id.* at 336; *see also Obrey v. Johnson*, 400 F.3d 691, 694 (9th Cir. 2005) (citing *Teamsters*). The Ninth Circuit has made clear that "a pattern or practice is 'discriminatory conduct that is widespread throughout a company or that is a routine and regular part of the workplace.'" RJN, Ex. 1 (*Strifling* Order at 8) (quoting *Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003)). Typically, a plaintiff supports a pattern or practice claim with allegations of significant statistical disparities coupled with anecdotal evidence that bring "the cold numbers convincingly to life." *Id.* at 339; *Teamsters*, 431 U.S. at 336.

Plaintiff fails to state a pattern or practice claim because neither her statistics alone, nor her statistics coupled with her anecdotal allegations, plausibly allege a pattern or practice of intentional discrimination based on sex.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW

a.    <u>Plaintiff Does Not Allege that Sex Discrimination Was "a Routine and Regular Part" of Twitter's Workplace.</u>

A plaintiff claiming that an employer engaged in a "pattern or practice" of discrimination must show "more than mere occurrence of isolated, accidental or sporadic discriminatory acts." *Teamsters*, 431 U.S. at 336.  Instead, a plaintiff must show that discrimination "was the company's standard operating procedure" meaning "the regular rather than the unusual practice." *Id.*  Here, Plaintiff relies upon a single event—the implementation of the Post-RIF Policies—to argue that discrimination was "a routine and regular part" of X's workplace, but the Post-RIF Policies on their own are insufficient to support that inference.  *See* RJN, Ex. 1 (*Strifling* Order at 9) (citations omitted) (rejecting the plaintiffs' argument that X "engaged in a pattern or practice of discrimination by implementing the RIF followed by the Post-RIF Policy" because "the RIF and Post-RIF Policy are two discrete acts insufficient to support the allegation that discriminatory conduct was 'a routine and regular part' of Twitter's workplace").  Accordingly, Plaintiff's disparate treatment claim fails on this basis.

b.    <u>Neither Plaintiff's Statistics Nor Her Anecdotal Evidence Support an Inference of Intentional Sex Discrimination.</u>

Statistics alone will not support a claim for intentional discrimination except in "rare" cases where there is a "stark pattern" of discrimination over and above the threshold of statistical significance for a disparate impact claim.  *See Gay v. Waiters' & Dairy Lunchmen's Union, Loc. No. 30*, 694 F.2d 531, 553 (9th Cir. 1982) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)).  That is so because taking a "purely statistical" approach to intentional discrimination "would almost completely blur the distinction between 'impact' and 'intent,' and thus eliminate the legal difference between disparate impact and disparate treatment lawsuits."  *Id.* at 552; *see also Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 312 (1977) (quoting *Teamsters*, 431 U.S. at 340)) (statistics "come in infinite variety" and their "usefulness depends on all of the surrounding facts and circumstances"); *see also Schechner v. CBS Broad., Inc.*, 2010 WL 2794374, at *7 (N.D. Cal. July 15, 2010) (collecting cases).  As a result, a plaintiff will try to bring "the cold numbers" of statistics "convincingly to life" through personal anecdotes

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW

1   and other circumstantial evidence.  *Gay*, 694 F.2d at 553 (quoting *Teamsters*, 431 U.S. at 339).

2         In the Complaint, Plaintiff acknowledges—as she must—that Twitter's Post-RIF Policies

3   impacted **all** employees—male and female alike.  *See* Compl., ¶¶ 27 (the Post-RIF Policies

4   "included expectations that employees would work an unreasonable number of hours and an

5   uncompromising directive that employees would be required to immediately work out of physical

6   offices); *id.*, ¶ 31 ("On November 16, 2022, Musk sent the following email to remaining Twitter

7   employees" stating that "working long hours at high intensity" was the new expectation).  Yet

8   Plaintiff concludes that "these policy changes and expectations would have a disproportionate

9   impact on women[.]"  *Id.*, ¶ 30.  The Complaint contains virtually no anecdotal allegations and does

10  not allege any sex-based animus directed towards Plaintiff or any other X employee.  The

11  Complaint offers nothing but a few stray public statements from Musk that are not tied to the Post-

12  RIF Policies or any other decision or policy at Twitter.  *See id.*, ¶¶ 37-41.  As Judge Tigar explained:

13        Plaintiffs' remaining allegations, namely their statistics and Musk's statements, fail
          to support that Twitter knew that granting discretion to the managers would result
14        in that discretion being used in a discriminatory manner.

15        …

16        Plaintiffs' inclusion of 'several of Musk's public statements belittling women and
          questioning their role in the workplace' do not cure this deficiency…  Here, Musk's
17        statements that Plaintiffs offer to demonstrate animus toward women… were not
          tied directly to the RIF, as Musk made them prior to his acquisition of Twitter. []
18        Further, Plaintiffs do not allege that Musk made the layoff decisions, but rather that
          a group of managers did so under his supervision.
19

20  RJN, Ex. 1 (*Strifling* Order at 9:15-17, 10:7-26).

21        Without substantial anecdotal allegations that plausibly suggest gender animus informed

22  X's decisions, Plaintiff's pattern or practice claim fails because there is nothing to "bring the cold

23  numbers convincingly to life."  *See Teamsters*, 431 U.S. at 336; *Gay*, 694 F.2d at 552-53.  In

24  addition, it is well settled that a company's purported knowledge or expectation that a policy would

25  have a disparate impact on female employees does not support an inference of intentional

26  discrimination.  *See Gay*, 694 F.2d at 552; *Am. Fed'n of State, Cnty., & Mun. Emps., AFL-CIO*

27  *(AFSCME) v. State of Wash.*, 770 F.2d 1401, 1405 (9th Cir. 1985) ("discriminatory intent implies

28  selection of a particular course of action at least in part because of, not merely in spite of, its adverse

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW

effects upon an identifiable group") (internal quotes omitted); *Wood v. City of San Diego,* 678 F.3d 1075, 1081-82 (9th Cir. 2012) (affirming dismissal because "[w]here, as here, a plaintiff is challenging a facially neutral policy, there must be a specific allegation of discriminatory intent. We agree with the district court that [plaintiff]'s disparate treatment claim must be dismissed under Rule 12(b)(6)."); *Jones v. Lewis*, 2020 WL 6149693, at *3 (N.D. Cal. Oct. 20, 2020) (dismissing disparate treatment claim based on a facially neutral policy because the complaint lacked "a specific allegation of discriminatory intent"); *see also EEOC v. Bloomberg L.P.*, 778 F. Supp. 2d 458, 485 (S.D.N.Y. 2011) ("At bottom, the EEOC's theory of this case is about so-called 'work-life balance.' Absent evidence of a pattern of discriminatory conduct—i.e., a pattern that women or mothers were discriminated against because of their pregnancy as compared with others who worked similar schedules—the EEOC's pattern or practice claim does not demonstrate a policy of discrimination at Bloomberg.")

Plaintiff therefore gets no mileage from her conclusory assertion that the Fork in the Road Email "was intended to, and did, result in further layoffs" and "resulted in more women … leaving the company than men."  Compl., ¶ 32.  For this reason, too, the Complaint fails to state a claim for intentional sex discrimination.

### B.   Plaintiff Fails to State a Disparate Impact Claim Based on Sex.

Disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another." *Teamsters*, 431 U.S. at 335.  To allege a *prima facie* disparate impact claim, "a plaintiff must allege (1) a significant disparity with respect to employment for the protected group, (2) the existence of a specific employment practice or set of practices, and (3) a causal relationship between the identified practice and the disparity." *Liu v. Uber Technologies Inc.*, 551 F.Supp.3d 988, 990 (N.D. Cal. 2021) (citing *Freyd v. University of Oregon*, 990 F.3d 1211, 1224 (9th Cir. 2021).  A disparate impact claim carries a "robust causality requirement," which ensures an observed disparity "does not, without more, establish a prima facie case of disparate impact." *Texas Dept. of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 542 (2015).  Indeed, as the Supreme Court has explained, "it is not enough to simply allege that there is a disparate impact

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW

on workers, or point to a generalized policy that leads to such an impact.  Rather, the employee is 'responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.'"  *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989)); *see Stout v. Potter*, 276 F.3d 1118, 1124 (9th Cir. 2002).  The Ninth Circuit has stressed that "'[i]dentifying a specific practice is not a trivial burden' in [] discrimination cases alleging disparate impact."  *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1114 (9th Cir. 2014) (quoting *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 101 (2008)).

Here, the alleged Post-RIF policies that required long and hard work are too vague and generic to constitute a discernible employment practice for disparate impact purposes.  *See Stout*, 276 F.3d at 1121-22; *Stockwell*, 749 F.3d at 1114.  In addition, the two percentages that the Complaint reports (i.e., 36% of female employees and 28% of male employees left the company in response to the Post-RIF Policies) are simply bottom-line figures that the Complaint does not tie to either of the Post-RIF Policies.  For instance, the Complaint does not identify the percentages of male and female employees who left the company because they did not want to work long hours at high intensity, the percentages who left because they wanted to work remotely rather than at a Twitter office, the percentages who left for both reasons, or the percentages who left due to reasons completely unrelated to the Post-RIF Policies.  The Complaint therefore fails to allege that either of the Post-RIF Policies caused a disparate impact on female employees.  *See Wards Cove,* 490 U.S. at 657 (A plaintiff cannot demonstrate disparate impact "simply by showing that at the bottom line there is racial imbalance in the work force."); *Stout*, 276 F.3d at 1121-22 ("Whether disparate impact was shown must address the results of the interview screening decisions, not simply the bottom line promotion decisions.")

What is more, the disparate impact claim fails for the fundamental reason that the separations that arose from the Post-RIF Policies were *voluntary*.  Compl., ¶ 31 (alleging that Musk asked employees whether they "agreed" to continue to work at Twitter "under the new conditions").  Those percentages necessarily reflect countless individualized decisions by employees about whether they wanted to continue to work for X under the alleged Post-RIF Policies.  *See Stout*, 276

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW

F.3d at 1121-22; *E.E.O.C. v. Bloomberg L.P.*, 778 F. Supp. 2d 458, 486 (S.D.N.Y. 2011) (affirming summary judgment against the EEOC and explaining that "[w]hether an individual in any family wishes to make that commitment is an intensely personal decision that must account for the tradeoffs involved, and it is not the role of the courts to dictate a healthy balance for all."). Because Plaintiff (and other employees) chose whether to stay or leave X, any purported causal chain between the Complaint's bottom-line percentages and the Post-RIF Policies is broken.

Recognizing this problem with her disparate impact theory, Plaintiff adopts two rhetorical strategies.

First, Plaintiff characterizes her decision to leave the company as a "layoff." Compl., ¶ 35. But that is a gratuitous characterization because nothing in the complaint plausibly suggests that the Post-RIF Policies constituted a layoff. *See Twombly*, 550 U.S. at 555 ("labels" insufficient). The Complaint itself acknowledges that the Fork in the Road email presented employees with a choice to stay at X. *See* Compl., ¶ 31 ("If you are sure that you want to be part of the new Twitter, please click yes on the link below[.]"). The fact that some individuals chose to leave does not transform their voluntary resignation into a layoff.

Second, Plaintiff re-frames her voluntary resignation as a "constructive discharge." However, as discussed above (*see supra* at 6:21-7:12), the Post-RIF policies do not come close to the kind of "extraordinary or egregious" working conditions that might satisfy the high bar set for a constructive discharge claim. *See Brooks*, 229 F.3d at 930; *see also Poland*, 494 F.3d at 1184.

Plaintiff's disparate impact claim therefore fails.

**C.     Plaintiff Fails to State a Claim for Intentional Age Discrimination.**

   1.     The Complaint Contains No Facts to Support an Inference that X Would Not Have Constructively Terminated Plaintiff But For Her Age.

First, as discussed above (*see supra* at 6:21-7:12), the Complaint contains no allegations that support a plausible inference that the Post-RIF Policies constituted a constructive discharge, let alone a constructive discharge that treated older and younger employees differently. *See Brooks*, 229 F.3d at 930; *see also Poland*, 494 F.3d at 1184.

Second, as discussed above (*see supra* at 7:13-24), Plaintiff's conclusory and factually

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW

1   unsupported allegation that her "performance met the company's expectations" does not satisfy the

2   pleading standard for a discrimination claim.  *See, e.g., Vizcaino*, 2015 WL 13573816, at *4;

3   *Fresquez*, 2014 WL 1922560, at *5; RJN, Ex. 1 (*Strifling* Order at 7-8).

4       Third, Plaintiff does not allege any facts to plausibly suggest that X treated her differently

5   than similarly situated younger employees.  The Complaint says nothing about Plaintiff's

6   qualifications, job performance, or abilities, or the comparative qualifications, job performance, or

7   abilities of younger employees who worked in substantially similar positions and who clicked 'yes'

8   in response to the Fork in the Road Email.  *See generally* Compl.  The Complaint's only attempt to

9   allege age animus is a Musk interview from March 2022—more than seven months before the

10  RIF—where he reportedly said that he "doesn't believe humans should live for longer."  *Id.*, ¶¶ 40-

11  41; RJN, Ex. 3(Fox Business article).  Musk made this statement in a discussion about "declining

12  birthrate" and human "longevity" as possible "threat[s] to the future of civilization," the "proper[]"

13  functioning of "democracy," and how he himself is "not afraid of dying."  *See* RJN, Ex. 3 (Fox

14  Business article, pp. 1-2).  The interview contains no comments about Musk's views about workers

15  age 50 and over or about employment practices at Twitter, a company that he did not acquire until

16  months later.  Musk's comment does not support any inference of age animus—let alone an

17  inference of "but-for" causation—because the Complaint contains nothing to link the comment to

18  the Post-RIF Policies.  *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438-39 (9th Cir. 1990);

19  RJN, Ex. 1 (*Strifling* Order at 10).[5]

20             2.    <u>Plaintiff Fails to Allege that X Engaged in a Pattern or Practice of Age</u>

21                  <u>Discrimination.</u>

22      Like Plaintiff's failed disparate treatment claim based on sex, Plaintiff fails to establish that

23  X engaged in a pattern or practice of age discrimination.

24      First, the implementation of the Post-RIF Policies is insufficient to demonstrate that age

25  discrimination was widespread throughout X.  Indeed, as Judge Tigar recently found in a similar

26

27       [5] The ADEA does not adopt Title VII's motivating factor test.  Instead, to state an age discrimination claim under the ADEA, a plaintiff must plead that age was the "but-for" cause of an adverse employment action.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009) (ADEA

28  requires "but-for" causation).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW

case, the Post-RIF Policies were not evidence that discrimination was a "routine and regular part" of X's workplace, even when evaluated in connection with the RIF.  *See* RJN, Ex. 1 (*Strifling* Order at 9:6-13) ("[T]he RIF and Post-RIF Policy are two discrete acts insufficient to support the allegation that discriminatory conduct was 'a routine and regular part' of Twitter's workplace[.]").

Second, Plaintiff offers no statistics at all to bolster her claim that the Post-RIF Policies were discriminatory toward older workers.  Plaintiff concludes, without any factual support, that "many older employees were forced out of the company after Musk's acquisition."  *See, e.g.,* Compl., ¶ 40.  But the Post-RIF Policies impacted all employees—not just the older ones.  *See* Compl., ¶ 31.  And Plaintiff's individual feelings and reactions to the Post-RIF Policies are an insufficient basis to infer that age discrimination was X's standard operating procedure.

Finally, the Complaint lacks any meaningful anecdotal allegations to support a plausible inference that age motivated the implementation of the Post-RIF Policies.  The Complaint contains no allegations of age animus towards Plaintiff or any other Twitter employee.  Plaintiff's only attempt to identify age animus is one stray quote from an interview with Musk, which Musk made prior to the acquisition.  Even if Musk's stray comment suggested age animus, which it does not, it still would not support any inference of age animus because the Complaint contains nothing to link the comment to the implementation of the Post-RIF Policies (or to any other policy or practice at Twitter).  *See, e.g.*, RJN, Ex. 1 (*Strifling* Order at 10) ("Isolated remarks, unrelated to the discriminatory employment decision, are generally insufficient to establish discriminatory intent"); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918-19 (9th Cir. 1996) (supervisor's comment that he wanted to get rid of "old timers" who did not "kiss the ass" of the supervisor did not support an inference of age discrimination because the comment was not tied directly to plaintiff's layoff and was "ambiguous"); *Maybin v. Hilton Grand Vacations Co., LLC*, 343 F.Supp.3d 988, 998 (D. Haw. Sept. 28, 2018) (finding comments that "the older agents, including [plaintiff], were too slow, can't learn, have a different way of doing things, are hard to teach new ways of sales, are too old to change, and don't have the energy necessary for sales," did not "explicitly reference age; rather, their intent and meaning must be circumstantially inferred . . . [nor did they] evince an extraordinarily strong showing of bias based upon [plaintiff's] age, especially because these

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW

1   comments are not linked directly to his termination"); *Cozzi v. County of Marin*, 787 F.Supp.2d

2   1047, 1058-59 (N.D. Cal. Apr. 18, 2011) (supervisor's comments regarding wanting "fresh faces"

3   did not constitute evidence of age discrimination "because such remarks do not lead to the

4   inescapable conclusion that [supervisor] wanted 'younger' faces or that she favored younger

5   employees.").

### D.   Plaintiff Fails to State a Claim for Disparate Impact Based on Age.

7       The Complaint also fails to state an age-based disparate impact claim for several reasons.

8       First, Plaintiff alleges that the Post-RIF Policies "affected and forced out older employees

9   (aged 50 and older)" and "led to employees aged 50 and older leaving the company." *See* Compl.,

10   Counts III and IV.  But the ADEA protects employees who are 40 or older.  The statute does not

11   recognize a disparate impact claim predicated on disparities for a "subgroup" of older workers who

12   are age 50 or older.  *E.E.O.C. v. McDonnell Douglas Corp.*, 191 F.3d 948, 951 (8th Cir. 1999) ("If

13   disparate-impact claims on behalf of subgroups were cognizable under the ADEA, the consequence

14   would be to require an employer engaging in a RIF to attempt what might well be impossible: to

15   achieve statistical parity among the virtually infinite number of age subgroups in its work force.

16   Adoption of such a theory, moreover, might well have the anomalous result of forcing employers

17   to take age into account in making layoff decisions, which is the very sort of age-based decision-

18   making that the statute proscribes."); *Smith v. Tennessee Valley Auth.*, 924 F.2d 1059 (6th Cir.

19   1991) ("A plaintiff cannot succeed under a disparate impact theory by showing that younger

20   members of the protected class were preferred over older members of the protected class.") (citing

21   *Lowe*, 886 F.2d at 1373); *Criley v. Delta Air Lines, Inc.*, 119 F.3d 102, 105 (2d Cir. 1997) (disparate

22   impact claim under the ADEA must "allege a disparate impact on the entire protected group, i.e.,

23   workers aged 40 and over.") (citing *Lowe v. Commack Union Free Sch. Dist.*, 886 F.2d 1364, 1372–

24   73 (2d Cir. 1989)).

25       Although the Ninth Circuit has not decided the issue, district courts in this Circuit have

26   repeatedly rejected "subgroup" disparate impact claims under the ADEA.  *See, e.g., Kinnally v.*

27   *Rogers Corp.*, 2009 WL 597211, at *10 (D. Ariz. Mar. 9, 2009) ("The Court agrees with the circuits

28   that have rejected disparate impact claims based on age sub-groups. The Court believes that the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW

1    Ninth Circuit Court of Appeals would also agree with those circuits"); *Schechner v. KPIX-TV*, 2011

2    WL 109144, at *5 (N.D. Cal. Jan. 13, 2011) ("[C]ourts have consistently held that the relevant

3    group for purposes of a disparate impact age discrimination cases consists of individuals aged 40

4    or older."); *Rudwall v. Blackrock, Inc.*, 2011 WL 767965, (N.D. Cal. Feb. 28, 2011) ("[Plaintiff's]

5    Rudwall's relevant statistical data fail to compare the impact of BlackRock's 2008 terminations on

6    employees aged 40 and older to the impact on those aged 39 and younger, and thus they fail to

7    support a prima facie case of disparate impact age discrimination.").[6]  As a result, Plaintiff's ADEA

8    disparate impact "subgroup" claim fails as a matter of law.

9         Second, the Complaint is devoid of any statistics or comparative figures that suggest the

10   Post-RIF Policies adversely impacted older workers.   Plaintiff's disparate impact claim is

11   predicated only on the factually unsupported conclusion that "older employees were laid off in

12   greater proportion than younger employees, and many older employees were forced out of the

13   company after Musk's acquisition." Compl., ¶ 40.  This does not meet the pleading standard for a

14   disparate impact claim.   *Twombly*, 550 U.S. at 570;  *see also Stout*, 276 F.3d at 1121.

15        Finally, like Plaintiff's failed disparate impact claim based on sex, Plaintiff's age-based

16   disparate impact claim fails because she does not isolate and identify a specific employment

17   practice to challenge. *See supra* at 11:18-13:20.

18   **V.    CONCLUSION**

19        For the reasons stated above, the Complaint fails to state a claim for sex discrimination or

20   age discrimination under either a disparate treatment or a disparate impact theory.  X therefore

21   respectfully requests that this Court issue an Order dismissing the Complaint in its entirety.

22

23

24

25

26

27   ─────────────────
[6] Judge Illston disagreed with these authorities and concluded that the ADEA recognizes a sub-

28   group disparate impact claim.  *See Zeman v. Twitter, Inc.*, 2023 WL 5599609, at *5 (N.D. Cal. Aug. 29, 2023).  Respectfully, that conclusion in *Zeman* is legal error.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO                                17                   TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW

1   Dated: February 8, 2024             MORGAN, LEWIS & BOCKIUS LLP

2

3                         By  */s/ Brian D. Berry*

4                             Eric Meckley
                               Brian D. Berry

5                             Roshni C. Kapoor
                             Ashlee N. Cherry

6                             Kassia Stephenson
                             Attorneys for Defendant

7                             X CORP. f/k/a TWITTER, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS
CASE NO. 4:24-CV-00125-KAW