SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

*Attorneys for Plaintiff Sydney Frederick-Osborn,*
*on behalf of herself and all others similarly situated*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SYDNEY FREDERICK-OSBORN, on behalf of herself and all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>TWITTER, INC., and  X CORP.,<br><br>             Defendants | Case No. 3:24-cv-00125-JSC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT X CORP. F/K/A TWITTER INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:    March 21, 2024<br>Time:    1:30 p.m.<br>Judge:  Hon. Jacqueline S. Corley |

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................... 1

II.   PROCEDURAL AND FACTUAL BACKGROUND ............................................... 3

III.  ARGUMENT .......................................................................................................... 5

      A.    Legal standard for a motion to dismiss under Rule 12(b)(6). ................... 5

      B.    Frederick-Osborn has pleaded sufficient facts to plausibly allege that she
            and other female and older Twitter employees were laid off. ................... 6

      C.    Alternatively, Frederick-Osborn has pleaded sufficient facts to
            demonstrate that she and other female and older Twitter employees were
            constructively discharged. .......................................................................... 7

      D.    Frederick-Olson has pleaded sufficient facts to raise an inference of
            unlawful discrimination. ............................................................................ 9

      E.    Frederick-Osborn is not required to plead a pattern or practice of
            discrimination but, regardless, she has adequately pleaded such a pattern. ......... 14

      F.    Frederick-Osborn has adequately pleaded sex and age discrimination
            claims under a disparate impact theory of liability. ................................ 16

IV.   CONCLUSION ...................................................................................................... 21

PLAINTIFF'S OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

Angarita v. St. Louis County, 981 F.2d 1537 (8th Cir.1992) ........................................................ 9

4

Ashcroft v. Iqbal, 556 U.S. 662 (2009)......................................................................................... 5

5

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ......................................................................... 5

6

Best v. California Dep't of Corr., 21 F. App'x 553 (9th Cir. 2001) .............................................. 10

7

8

Borja-Valdes v. City & Cnty. of San Francisco, 2015 WL 5522287 (N.D. Cal. Sept. 18,
    2015). ........................................................................................................................... 12

9

Brooks v. City of San Mateo, 229 F.3d 917 (9th Cir. 2000) .......................................................... 8

10

Brown v. Brennan, 2020 WL 607029 (N.D. Cal. Feb. 7, 2020)..................................................... 6

11

Brown v. City of New York, 2017 WL 110267 (E.D.N.Y. Mar. 23, 2017) ..................................... 19

12

Buchanan v. Tata Consultancy Services, Ltd., 2017 WL 6611653 (N.D. Cal. Dec. 27,
    2017) ....................................................................................................................... 14, 15

13

14

Cerjanic v. FCS USA, LLC, 2018 WL 3729063 (E.D. Mich. Aug. 6, 2018).............................. 21

15

Coleman v. Quaker Oats Co., 232 F.3d 1271 (9th Cir. 2000) ..................................................... 16

16

Conner v. Raver, 2023 WL 5498728 (N.D. Cal. Aug. 24, 2023) .................................................. 3

17

Cooper v. Cate, 2011 WL 5554321 (E.D. Cal. Nov. 15, 2011)................................................... 13

18

Costa v. Desert Palace, Inc., 299 F.3d 838 (9th Cir. 2002), aff'd, 539 U.S. 90 (2003)............... 15

19

Davis v. Team Elec. Co., 520 F.3d 1080 (9th Cir. 2008) .............................................................. 6

20

Debro v. Contra Costa Cmty. Coll. Dist., 2021 WL 5585592 (N.D. Cal. Nov. 30, 2021).......... 10

21

Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201 (9th Cir. 2008).............................................. 10

22

Diemert v. City of Seattle, WL 5530009 (W.D. Wash. Aug. 28, 2023)......................................... 8

23

Doheny v. Int'l Bus. Machines, Corp., 2024 WL 382142 (S.D.N.Y. Feb. 1, 2024) ................... 16

24

Drevaleva v. Dep't of Veterans Affs., 835 F. App'x 221 (9th Cir. 2020)................................... 15

25

E.E.O.C. v. Bloomberg L.P., 778 F. Supp. 2d 458 (S.D.N.Y. 2011) ............................................ 9

26

Egbukichi v. Wells Fargo Bank, NA, 2017 WL 1199737 (D. Or. Mar. 29, 2017)...................... 13

27

28

*Erickson v. Pardus*, 551 U.S. 89 (2007) ........................................................... 5

*Fallcochia v. Saxon Mortg., Inc.*, 709 F.Supp.2d 860 (E.D. Cal. 2010)......................... 5

*Finch v. Hercules, Inc.*, 865 F. 1104 (D. Del. 1994).......................................... 21

*Fox v. Bonneville Admin.*, 243 F.3d 547 (9th Cir. 2000)....................................... 20

*Gamble v. Kaiser Foundation Health Plan, Inc.*, 348 F. Supp. 3d 1003 (N.D. Cal. 2018) .......... 19

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997) ................................... 2

*Graffam v. Scott Paper Co.*, 848 F. Supp. 1 (D. Maine 1994).................................. 21

*Hamm v. Nielsen*, 2019 WL 6499209 (C.D. Cal. July 30, 2019)................................ 12

*Haney v. United Airlines, Inc.*, 2016 WL 80554 (N.D. Cal. Jan. 7, 2016)....................... 10

*Haro v. Therm-X of California, Inc.*, 2015 WL 5121251 (N.D. Cal. Aug. 28, 2015)............... 12

*Heath v. Google LLC*, 345 F. Supp. 3d 1152 (N.D. Cal. 2018) ................................ 14

*Hemmings v. Tidyman's Inc.*, 285 F.3d 1174 (9th Cir. 2002) ................................. 17

*Hicks v. Netflix, Inc.*, 472 F. Supp. 3d 763 (C.D. Cal. 2020)................................. 6

*Horn v. Cushman & Wakefield Western*, 72 Cal. App. 4th 798 (1999)......................... 14

*Hwang v. Nat'l Tech. & Eng'g Sols. of Sandia, LLC*, 2024 WL 208139 (9th Cir. Jan. 19, 2024) ..................................................................... 9

*International Broth. of Teamsters v. United States*, 431 U.S. 324 (1977)....................... 2, 14, 15

*Jenkins v. New York City Transit Auth.*, 646 F. Supp. 2d 464 (S.D.N.Y. 2009) ................ 19

*Jordan v. Clark*, 847 F.2d 1368 (9th Cir. 1988)............................................. 7

*Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61 (3rd Cir. 2017)........................... 20

*Katz v. Regents of the Univ. of California*, 229 F.3d 831 (9th Cir. 2000) ..................... 16

*Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012)......................................... 16

*Knappenberger v. City of Phoenix*, 566 F.3d 936 (9th Cir. 2009) ............................. 9

*Lee v. Hertz Corp.*, 330 F.R.D. 557 (N.D. Cal. 2019) ....................................... 17

*Leland v. City & Cnty. of San Francisco*, 576 F. Supp. 2d 1079 (N.D. Cal. 2008) .............. 10

*Lindsey v. Claremont Middle Sch.*, 2012 WL 5988548 (N.D. Cal. Nov. 29, 2012) ............... 10

PLAINTIFF'S OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT

Loza v. Intel Americas, Inc., 2020 WL 7625480 (N.D. Cal. Dec. 22, 2020) ............................... 12

Lyons v. England, 307 F.3d 1092 (9th Cir. 2002) ............................................................... 2, 9, 10

Mahler v. Judicial Counsel of Cal., 67 Cal.App.5th 82 (2021) ............................................. 21

Marziano v. Cty. of Marin, 2010 WL 3895528 (N.D. Cal. Oct. 4, 2010) .................................... 13

Mata v. Ill. State Police, 2001 WL 292804 (N.D.Ill. Mar. 22, 2001)........................................... 19

McDonnell Douglas Corp. v. Green,  411 U.S. 792 (1973) .............................................. 2, 10, 15

McGinest v. GTE Service Corp., 360 F.3d 1103 (9th Cir. 2004)................................................. 10

Menoken v. McGettigan, 273 F. Supp. 3d 188 (D.D.C. 2017), aff'd sub nom. Menoken v.
    Pon, 2018 WL 2383278 (D.C. Cir. May 9, 2018) ............................................................... 20

Mi Pueblo San Jose, Inc. v. City of Oakland, 2006 WL 2850016 (N.D. Cal. Oct. 4, 2006) ........ 13

Miller v. Beam, 2023 WL 8587265 (N.D. Cal. Dec. 11, 2023)….................................................. 5

Miller v. D.F. Zee's, Inc., 31 F. Supp. 2d 792 (D. Or. 1998) .................................................. 7, 8

Morales v. Laborers' Union Loc. 304, 2012 WL 70578 (N.D. Cal. Jan. 9, 2012) ........................ 5

Moussouris v. Microsoft Corp., 2016 WL 6037978 (W.D. Wash. Oct. 14, 2016)....................... 17

Navarro v. Block, 250 F.3d 729 (9th Cir. 2001)......................................................................... 6

O'Brien v. Caterpillar, Inc., 900 F.3d 923 (7th Cir. 2018) ................................................... 20

O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, (1996). ........................................ 20

O'Donnell v. U.S. Bancorp Equip. Fin., Inc., 2010 WL 2198203 (N.D. Cal. May 28,
    2010) ............................................................................................................................. 5, 11

Pedreira v. Ky. Baptist Homes for Children, Inc., 579 F.3d 722 (6th Cir. 2009)...................... 15

Penn. State Police v. Suders, 542 U.S. 129 (2004).................................................................... 7

Roache v. Long Island R.R., 487 F. Supp. 3d 154 (E.D.N.Y. 2020).......................................... 7

Satterwhite v. Smith, 744 F.2d 1380 (9th Cir.1984)................................................................... 7

Segar v. Smith, 738 F. 2d 1249 (D.C. Cir. 1984) ................................................................... 15

Sengupta v. Morrison-Knudsen Co., 804 F.2d 1072 (9th Cir. 1986) ...................................... 16

Serrano v. Cintas Corp., 699 F.3d 884 (6th Cir. 2012).......................................................... 2, 15

_Sheppard v. David Evans & Assoc._, 694 F.3d 1045 (9th Cir. 2012)....................................... 11, 12

_Skaff v. Meridien N. Am. Beverly Hills, LLC_, 506 F.3d 832 (9th Cir. 2007) ............................. 19

_Stockwell v. City and County of San Francisco_, 749 F.3d 1107 (9th Cir. 2014) ........................ 18

_Stout v. Potter_, 276 F.3d 1118 (9th Cir. 2002) ........................................................................ 9, 18

_Strifling v. Twitter, Inc._, Case No. 22-cv-07739-JST, slip op. (N.D. Cal. May 8, 2023)............. 13

_Swierkiewicz v. Sorema N.A._, 534 U.S. 506 (2002).............................................................. 15, 19

_Texas Dep't of Cmty. Affs. v. Burdine_, 450 U.S. 248 (1981) .............................................. 10, 11

_Thomas v. San Francisco Hous. Auth._, 2017 WL 878064 (N.D. Cal. Mar. 6, 2017).................. 17

_Tichenor v. BAE Systems Technology Solutions & Services, Inc._, 2021 WL 2559704
    (S.D. Cal. April 16, 2021).......................................................................................................2

_Travers v. Flight Servs. & Sys., Inc._, 737 F.3d 144 (1st Cir. 2013) ............................................ 14

_United States v. Maricopa Cnty., Ariz._, 915 F. Supp. 2d 1073 (D. Ariz. 2012)......................... 19

_Usher v. O'Reilly Automotive, Inc._, 2014 WL 12597587 (C.D. Cal. May 27, 2014) ................ 14

_Watson v. Nationwide Ins. Co._, 823 F.2d 360 (9th Cir.1987) ...................................................... 7

_Williams v. Alhambra Sch. Dist. No. 68_, 234 F. Supp. 3d 971 (D. Ariz. 2017) .......................... 7

_Wilson v. Timec Servs. Co., Inc._, 2023 WL 5753617 (E.D. Cal. Sept. 6, 2023) ........................ 17

_Wood v. City of San Diego_, 678 F.3d 1075 (9th Cir. 2012)......................................................... 10

_Zeman v. Twitter, Inc._, 2023 WL 5599609 (N.D. Cal. Aug. 29, 2023) ................................ 19, 20

_Zody v. Microsoft Corp._, 2012 WL 1747844 (N.D. Cal. May 16, 2012)....................................... 8

**Statutes**

29 U.S.C. § 621 ................................................................................................................................ 1

42 U.S.C. § 2000e, _et seq_.................................................................................................................. 1

Gov. Code § 12900, _et seq_ ............................................................................................................... 1

**Rules**

Fed. R. Civ. P. 8 ............................................................................................................................... 5

1

2

**I.      INTRODUCTION**

3        This case is brought by Sydney Frederick-Osborn, on behalf of herself and other female

4   and older former employees of Defendants (hereafter referred to as Twitter) who were laid off

5   from their jobs in the chaotic months after multi-billionaire Elon Musk purchased the company.

6   See Class Action Complaint (Dkt. 1). Frederick-Osborn brings claims of sex discrimination

7   under Title VII, 42 U.S.C. § 2000e, *et seq*., and the California Fair Employment and Housing

8   Act ("FEHA"), Gov. Code § 12900, *et seq*, and claims of age discrimination under the Age

9   Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, and the FEHA.

10       In its Motion to Dismiss the Complaint (Dkt. 13), Twitter argues that Frederick-Osborn

11  has failed to state a plausible claim for sex or age discrimination under either a disparate

12  treatment or disparate impact theory. Specifically, Twitter contends that all her claims fail

13  because her departure from Twitter was voluntary. Twitter further contends that her disparate

14  treatment claims fail because the complaint lacks sufficient factual allegations to support an

15  inference of sex or age discrimination and because she has failed to allege a pattern or practice of

16  discrimination. Finally, Twitter contends that her disparate impact claims fail for numerous

17  reasons, including that  the complaint does not identify a particular challenged employment

18  practice and because the ADEA does not recognize subgroup claims. These arguments are

19  without merit. Twitter's Motion to Dismiss should be denied.

20       First, Frederick-Osborn has alleged sufficient facts to support her claim that the

21  imposition of new work policies and requirements, culminating in the "Fork in the Road"

22  ultimatum demanding that employees agree to these policies and requirements within one day to

23  remain employed at Twitter, resulted in female and older employees being ushered out of the

24  company. Specifically, Frederick-Osborn alleged that Musk implemented the policies in question

25  as a strategy to extend the initial round of layoffs undertaken on November 4, 2022, that this

26  strategy resulted in hundreds more employees leaving the company, and that in particular (and

27  unsurprisingly) numerous female and older employees were laid off as a result of not agreeing to

28  Musk's unreasonable ultimatum. At this stage, those allegations are more than sufficient. See,

e.g., Tichenor v. BAE Systems Technology Solutions & Services, Inc., 2021 WL 2559704, at *6–7 (S.D. Cal. April 16, 2021).

Second, Frederick-Osborn has met her burden at the pleading stage by alleging sufficient facts to give rise to a plausible inference of disparate treatment on the basis of sex and age. As discussed at length below, Frederick-Osborn has alleged that Twitter implemented policy changes and imposed unreasonable new work expectations as part of an ongoing effort to reduce the number of female and older workers at Twitter. She has supported these allegations with data reflecting the disproportionate impact of the changes on female employees at Twitter and with Musk's public statements around the time of the layoffs evincing animus towards women and older workers. These allegations are more than sufficient to state a disparate treatment claim. See, e.g., Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997).

Third, Frederick-Osborn has adequately alleged a pattern or practice of discriminatory conduct by Musk and Twitter, first in initiating and executing layoffs that disproportionately affected female and older workers, and then by implementing policies and requirements designed to further force female and older workers out of the company. Regardless, Twitter's suggestion that Frederick-Osborn must allege a pattern or practice of discrimination to sustain her disparate treatment claim is flatly wrong. See Serrano v. Cintas Corp., 699 F.3d 884, 897 (6th Cir. 2012). At this stage, Frederick-Osborn is only required to plead sufficient facts to raise an "inference of unlawful discrimination," which she has. Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002). The question of what evidentiary framework she will ultimately utilize to prove her claim – the pattern or practice framework set forth in International Broth. of Teamsters v. United States, 431 U.S. 324 (1977) or the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) – is a question for a later date.

Finally, Frederick-Osborn has met all the requirements for pleading a prima facie disparate impact claim. She has identified particular employment practices and plausibly alleged that those practices had a disproportionate impact on female and older employees at Twitter. Specifically, she points to (1) the imposition of policies requiring Twitter employees to work an

unreasonable number of hours, (2) the uncompromising directive that employees needed to immediately begin working out of Twitter's physical offices, and (3) the requirement that employees indicate their assent to these policies within one day to avoid being laid off. These policies were communicated to Frederick-Osborn and other Twitter employees amid mass layoffs initiated by Musk and allegedly caused many female and older employees who remained at the company to be laid off. As such, Frederick-Osborn has "ma[de] the requisite pleading" to survive Twitter's motion to dismiss. Conner v. Raver, 2023 WL 5498728, at *6 (N.D. Cal. Aug. 24, 2023).

## II.      PROCEDURAL AND FACTUAL BACKGROUND

Frederick-Osborn alleges that Elon Musk completed his purchase of Twitter in late October 2022 and immediately began laying off more than half of its workforce. (Compl. ¶¶ 5, 19-20, Dkt. 1). The decisions regarding which employees would be laid off were made in just a few days under extremely hurried circumstances, and for thousands of employees, with little if any regard given to employees' job performance, qualifications, experience, and abilities. (Compl. ¶¶ 21-22, Dkt. 1). This initial round of layoffs affected women significantly more than men. (Compl. ¶¶ 6, 24, Dkt. 1). Amid the layoff, the media reported on widely circulated pictures of Twitter employees which revealed a stark contrast in the number of women who appeared to be employed at the company before and after Musk's acquisition. (Compl. ¶ 23, Dkt. 1). Older employees (ages 50 and over) were also statistically more likely to be chosen for layoff than younger employees. (Compl. ¶ 25, Dkt. 1).

Twitter's efforts to cull its workforce of female and older employees persisted even after these initial layoffs. (Compl. ¶ 26, Dkt. 1). To reduce the number of female and older workers at Twitter, Musk implemented numerous work policies and requirements designed to force female and older workers out of the company, which were intended to (and did) send the message that female and older employees were no longer welcome at Twitter. (Compl. ¶ 26, Dkt. 1). These requirements included the expectation that employees would report to work at a physical Twitter office (even though Twitter had freely allowed remote work previously) for 12-hour shifts 7 days

a week. (Compl. ¶¶ 27-28, Dkt. 1). Some employees were told "[t]he expectation is literally to work 24/7 to get this out;" others slept in Twitter offices while being required to work around the clock. (Compl. ¶ 28, Dkt. 1). These demands were implemented while layoffs were ongoing, making clear that compliance was necessary to remain at Twitter. (Compl. ¶ 29, Dkt. 1).

On November 16, 2022, Musk sent an email to remaining Twitter employees containing an ultimatum: to continue working at Twitter, employees "need to be extremely hardcore," which meant "working long hours at high intensity" where "[o]nly exceptional performance will constitute a passing grade." (Compl. ¶ 31, Dkt. 1). This "Fork in the Road" ultimatum required employees to indicate their assent to the new policies and work conditions by the following day or be laid off. (Compl. ¶ 31, Dkt. 1). The clear message conveyed by this ultimatum was that Twitter was seeking to attain a workforce that was largely young and male. (Compl. ¶¶ 32-33, Dkt. 1). The result was as intended – approximately 36% of the women remaining at Twitter left due to the ultimatum, compared to approximately 28% of the men. (Compl. ¶¶ 32, Dkt. 1). After receiving the ultimatum, Frederick-Osborn, who was in her late 50s at the time, felt she was no longer welcome at Twitter and did not click yes on the link contained in the "Fork in the Road" email. (Compl. ¶ 34, Dkt. 1). The following day, she was laid off. (Compl. ¶ 35, Dkt. 1).

Frederick-Osborn alleges that Twitter's discriminatory conduct is unsurprising given the sexist, demeaning, and hostile comments that Elon Musk has made about and directed towards women. (Compl. ¶ 36, Dkt. 1). For example, it was widely publicized that Musk joked about naming a school using the acronym "TITS"; he also joked about women's breasts on Twitter, tweeted "Testosterone rocks [not gonna lie]," and publicly avowed that it was more important for women to have a lot of babies than to pursue their careers. (Compl. ¶¶ 36-38, Dkt. 1). Musk also had the "w" on the sign of the corporate headquarters painted white so that the company's name appeared to be "Titter." (Compl. ¶ 39, Dkt. 1). Similarly, Musk's discriminatory conduct towards older people was unsurprising given his history of making ageist comments, including his statement in an interview a few months prior to purchasing Twitter that "I don't think we should try to have people live for a really long time" because "if they don't die, we will be stuck

with old ideas and society wouldn't advance . . . [a]nd it is just impossible to stay in touch with the people if you are many generations older than them." (Compl. ¶¶ 40-41, Dkt. 1).

### III.   ARGUMENT

#### A.   Legal standard for a motion to dismiss under Rule 12(b)(6).

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (internal citations omitted); see also Miller v. Beam, 2023 WL 8587265, *1 (N.D. Cal. Dec. 11, 2023) ("Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'") (quoting Erickson v. Pardus, 551 U.S. 89, 93 (2007)). Thus, Frederick-Olson need only "state a claim to relief that is plausible on its face" to survive Twitter's motion to dismiss. Twombly, 550 U.S. at 555. "A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendants are liable for the misconduct alleged." Morales v. Laborers' Union Loc. 304, 2012 WL 70578, at *1 (N.D. Cal. Jan. 9, 2012).

Courts follow "a two-step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, 'plausibly give rise to an entitlement to relief.'" Fallcochia v. Saxon Mortg., Inc., 709 F.Supp.2d 860, 865 (E.D. Cal. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). "'Plausibility,' as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. Accordingly, "it would be improper to dismiss a complaint 'for failing to allege certain additional facts that [Plaintiff] would need at the trial stage to support his claim.'" O'Donnell v. U.S. Bancorp Equip. Fin., Inc., 2010 WL 2198203, at *3 (N.D. Cal. May 28, 2010) (quoting Twombly, 550 U.S. at 569–70). Rather, "[d]ismissal is proper only where

there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

**B.    Frederick-Osborn has pleaded sufficient facts to plausibly allege that she and other female and older Twitter employees were laid off.**

Twitter's contention that Frederick-Osborn's discrimination claims must be dismissed because her departure from the company was "voluntary" is without merit. Frederick-Osborn alleges that she was forced out of the company during an ongoing wave of mass layoffs. After executing a massive company-wide layoff that disproportionately impacted female and older Twitter workers, Twitter imposed new work conditions, including the demand that employees immediately begin working an unreasonable at least 12-hour shifts, 7 days per week. Twitter also rescinded its prior policy of freely allowing remote work and ordered all employees to immediately begin working out of its physical offices. Employees reported being expected "literally to work 24/7" on projects, and others slept in Twitter offices while being required to work around the clock. Then, amid these continuing mass layoffs, Musk emailed all employees an ultimatum requiring them to agree to being "extremely hardcore" and "working long hours at high intensity" to remain at the company. Employees who did not indicate their assent to Musk's unreasonable demands, including Frederick-Osborn, were laid off the next day. These allegations are more than sufficient to plausibly allege that Frederick-Osborn and other similarly situated employees suffered an adverse employment action in the form of a layoff. See Davis v. Team Elec. Co., 520 F.3d 1080, 1094 (9th Cir. 2008) ("[I]t is clear that [the plaintiff] suffered an adverse employment action when she was laid off.").

Twitter's argument to the contrary is an improper invitation to resolve issues of fact at the pleading stage. At this stage, Frederick-Osborn is only required to "allege facts sufficient to support a plausible inference that she suffered an adverse employment action." Brown v. Brennan, 2020 WL 607029, at *6 (N.D. Cal. Feb. 7, 2020). She need not prove the merits of her case to survive Twitter's motion to dismiss. See, e.g., Hicks v. Netflix, Inc., 472 F. Supp. 3d 763, 778 (C.D. Cal. 2020) (denying motion to dismiss where plaintiff "plausibly alleges an adverse

employment action to state a retaliation claim at this stage of the case"); Williams v. Alhambra Sch. Dist. No. 68, 234 F. Supp. 3d 971, 982 (D. Ariz. 2017) (concluding that Title VII claim was "adequately pled" where plaintiff "plausibly alleged being subjected to an adverse employment action"); see also Roache v. Long Island R.R., 487 F. Supp. 3d 154, 172 (E.D.N.Y. 2020) (denying motion to dismiss Title VII discrimination claims where plaintiff's "allegations . . . plausibly recount adverse employment actions"). Accordingly, Frederick-Osborn has met her burden of pleading an adverse employment action at this early stage.

> ### C. Alternatively, Frederick-Osborn has pleaded sufficient facts to demonstrate that she and other female and older Twitter employees were constructively discharged.

Frederick-Osborn disagrees with Twitter's assertion that her departure from the company was anything other than a layoff and, as explained above, she has alleged sufficient facts regarding the circumstances at the company leading up to the "Fork in Road" ultimatum to support her allegation. Nevertheless, even under Twitter's account of these circumstances, Frederick-Osborn has pleaded sufficient facts to sustain her discrimination claims on the theory that her departure from the company constituted a constructive discharge.

"Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." Penn. State Police v. Suders, 542 U.S. 129, 141 (2004). "A constructive discharge occurs when, looking at the totality of circumstances, 'a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions.'" Watson v. Nationwide Ins. Co., 823 F.2d 360, 361 (9th Cir.1987) (quoting Satterwhite v. Smith, 744 F.2d 1380, 1381 (9th Cir.1984) (alteration in the original)). "If shown, constructive discharge is an adverse employment action" which gives rise to an employment discrimination claim. Jordan v. Clark, 847 F.2d 1368, 1377, n.10 (9th Cir. 1988).

"The determination of whether conditions are so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question." Miller v. D.F. Zee's, Inc., 31 F. Supp. 2d 792, 804 (D. Or. 1998). To survive a motion to dismiss, a plaintiff's

allegations of constructive discharge need only be "plausible." <u>Diemert v. City of Seattle</u>, WL 5530009, at *5 (W.D. Wash. Aug. 28, 2023). "Whether the continuous discrimination and harassment that Plaintiff has alleged actually rose to the level of 'extraordinary' or 'egregious' for the purposes of constructive discharge is an issue of fact that cannot be resolved on a motion to dismiss." <u>Zody v. Microsoft Corp.</u>, 2012 WL 1747844, at *5 (N.D. Cal. May 16, 2012); <u>see also</u> <u>Diemert</u>, 2023 WL 5530009 at *5 ("Deciding whether the alleged hostile-work environment [the plaintiff] faced was so egregious that it forced him to quit is beyond the scope of the Court's inquiry on the [defendant's] Rule 12(b)(6) motion."). As recounted above, Frederick-Osborn has plainly alleged sufficient facts from which a trier of fact could conclude that Twitter "impose[d] intolerable working conditions [which] foreseeably would compel a reasonable employee to quit." <u>Brooks v. City of San Mateo</u>, 229 F.3d 917, 930 (9th Cir. 2000) (quoting EEOC, Policy Guidance on Sexual Harassment, 8 BNA FEP Manual 405:6681 (Mar. 19, 1990)).

In response, Twitter argues that Frederick-Osborn's claims must fail because the policies and demands she complains about are not "sufficiently extraordinary and egregious" to result in a constructive discharge. (Mot. to Dismiss, p. 6, L.23, Dkt. 13). Again, this is not a question for this Court to resolve at this early stage. <u>See</u>, <u>Zody</u>, 2012 WL 1747844 at *5; <u>Diemert</u>, 2023 WL 5530009 at *5. Twitter also suggests that Frederick-Osborn's claims fail because some other employees remained at Twitter after the "Fork in the Road" email. (Mot. to Dismiss, p. 7, L.8-11, Dkt. 13). Unsurprisingly, Twitter does not cite any case law in support of this argument: it is not the rule that <u>every</u> employee must resign from a company for <u>any</u> employee to bring a plausible constructive discharge claim. Frederick-Osborn's allegations of numerous actions contributing to a massive deterioration in the workplace environment at Twitter are more than sufficient to state a plausible constructive discharge claim. <u>See</u> <u>Miller</u>, 31 F. Supp. 2d at 804 (explaining that while "[a] single isolated instance of employment discrimination . . . is insufficient, as a matter of law, to support a finding of constructive discharge," the question of whether a constructive discharge occurred is ordinarily a fact issue).

The basic premise of the constructive discharge doctrine is that the purported choice to

remain in a workplace where "the employer intentionally permitted working conditions [to become] so intolerable that a reasonable person in the employee's position would have been compelled to resign" is not really a choice at all. Hwang v. Nat'l Tech. & Eng'g Sols. of Sandia, LLC, 2024 WL 208139, at *1 (9th Cir. Jan. 19, 2024). The constructive discharge doctrine recognizes that a decision technically made by an employee might functionally be "involuntary" under circumstances created by the employer. Knappenberger v. City of Phoenix, 566 F.3d 936, 940 (9th Cir. 2009). Under Twitter's theory, constructive discharge claims simply would not exist because employees who bring constructive discharge claims always "chose whether to stay or leave." (Mot. to Dismiss, p. 13, L.5, Dkt. 13); but see Knappenberger, 566 F.3d at 941 ("[A] resignation may be found involuntary if, from the totality of the circumstances, it appears that the employer's conduct in requesting or obtaining the resignation effectively deprived the employee of free choice in the matter.") (quoting Angarita v. St. Louis County, 981 F.2d 1537, 1544 (8th Cir.1992)).[1]

In essence, Twitter invites this Court to prematurely resolve numerous factual issues regarding the circumstances of Frederick-Osborn's departure from the company. Frederick-Osborn has plausibly alleged that she was laid off or, in the alternative, that she was constructively discharged due to Twitter's imposition of unreasonable new work policies and requirements. Accordingly, the argument that any of Frederick-Osborn's claims should be dismissed on the grounds that her discharge was "voluntary" should be rejected.

**D.     Frederick-Olson has pleaded sufficient facts to raise an inference of unlawful discrimination.**

To prove a Title VII claim on a theory of disparate treatment, "a plaintiff must provide evidence that 'give[s] rise to an inference of unlawful discrimination.'" Lyons, 307 F.3d at 1112

---

[1]      The two cases Twitter relies on to support this argument do not help its position—in both cases, the court was addressing a motion for summary judgment (not a motion to dismiss) and, more importantly, the plaintiffs did not allege they were constructively discharged. See E.E.O.C. v. Bloomberg L.P., 778 F. Supp. 2d 458, 462 (S.D.N.Y. 2011) (granting summary judgment in pregnancy discrimination claim); Stout v. Potter, 276 F.3d 1118, 1121 (9th Cir. 2002) (affirming grant of summary judgment).

(quoting Texas Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 253 (1981)). A plaintiff may establish disparate treatment either through direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, see McGinest v. GTE Service Corp., 360 F.3d 1103, 1121-22 (9th Cir. 2004), or "through circumstantial evidence, following the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)," Lyons, 307 F.3d at 1112. A plaintiff establishes a prima facie case of disparate treatment under McDonnell Douglas by showing that: "(1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably." Best v. California Dep't of Corr., 21 F. App'x 553, 558 (9th Cir. 2001). The same standard applies to sex discrimination claims arising under the FEHA, see, e.g., Debro v. Contra Costa Cmty. Coll. Dist., 2021 WL 5585592, at *3 (N.D. Cal. Nov. 30, 2021), and to age discrimination claims arising under the ADEA and the FEHA, see Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201, 1207 (9th Cir. 2008) (applying the McDonnel Douglas burden-shifting framework to an ADEA claim); Leland v. City & Cnty. of San Francisco, 576 F. Supp. 2d 1079, 1094 (N.D. Cal. 2008) ("The McDonnell Douglas burden-shifting framework is also applicable to claims of discrimination pursuant to California law under FEHA.").

To state a disparate treatment claim, a plaintiff is only required to plead enough facts to plausibly allege that "an employer has treated [her] less favorably than others because of a protected trait." Wood v. City of San Diego, 678 F.3d 1075, 1081 (9th Cir. 2012). A plaintiff "need not plead a McDonnell Douglas prima facie case . . . to survive a motion to dismiss." Haney v. United Airlines, Inc., 2016 WL 80554, at *3 (N.D. Cal. Jan. 7, 2016). All that is required are factual allegations sufficient to show that the plaintiff's legal claims "have substantive plausibility." Id. However, "even though [a plaintiff] does not need to establish prima facie cases for his or her claims at [the pleading stage], the court will look to the required elements to determine whether the facts that are alleged state plausible claims for relief." Lindsey v. Claremont Middle Sch., 2012 WL 5988548, at *2 n.3 (N.D. Cal. Nov. 29, 2012).

"[W]here a plaintiff pleads a plausible prima facie case of discrimination, the plaintiff's complaint will be sufficient to survive a motion to dismiss." Sheppard v. David Evans & Assoc., 694 F.3d 1045, 1050 (9th Cir. 2012).

Here, Frederick-Osborn has pleaded all facts necessary to establish the four elements of a prima facie case of disparate treatment under Title VII, the ADEA, and the FEHA. First, Frederick-Olson has pleaded that she is a member of two protected classes: she has alleged that she is female and was discriminated against by Twitter on the basis of her sex, and that she is age fifty (50) or older and was discriminated against by Twitter on the basis of her age. (Compl. ¶¶ 9-11, 34, Dkt. 1). Second, Frederick-Olson has identified her former position at Twitter and pleaded that her job performance met Twitter's expectations throughout her employment. (Compl. ¶ 9, Dkt. 1). Third, Frederick-Olson pleaded that she suffered an adverse employment action in the form of a lay off from Twitter after its implementation of new policies and requirements regarding work hours and remote work amid ongoing mass layoffs, and Musk's issuance of the "Fork in the Road" ultimatum. (Compl. ¶¶ 18-41, Dkt. 1). Fourth, Frederick-Olson pleaded that she was treated less favorably than similarly situated younger and male employees. (Compl. ¶¶ 36-41, Dkt. 1). Accordingly, Frederick-Olson has met her burden at this stage of the proceedings, which is "not onerous." Burdine, 450 U.S. at 253.

Frederick-Olson has also presented supporting factual allegations that "raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." O'Donnell, 2010 WL 2198203 at *3. She has alleged that Twitter's initial round of layoffs was executed under hurried circumstances, with little (if any) attention paid to job performance, resulting in a disproportionate share of women and older employees being terminated. (Compl. ¶¶ 21-25, Dkt. 1). She further alleged that policies and requirements implemented after this initial round of layoffs were designed to, and had the effect of, forcing more women and older employees out of Twitter. (Compl. ¶¶ 26-35, Dkt. 1). She specifically alleged that approximately 36% of female employees who remained at Twitter after the first round of layoffs left after the "Fork in the Road" ultimatum, as compared to only 28% of men. (Compl. ¶¶ 26-35, Dkt. 1). And she alleged

that Twitter's discriminatory treatment of female and older workers was not surprising considering Musk's numerous sexist and ageist public comments, which evince his discriminatory animus and are imputed to the company he purchased and led. (Compl. ¶¶ 36-41, Dkt. 1). Plaintiff has clearly "pleaded enough facts to state a claim for relief that is plausible on its face." Borja-Valdes v. City & Cnty. of San Francisco, 2015 WL 5522287, at *3 (N.D. Cal. Sept. 18, 2015).

In response, Twitter contends that Frederick-Osborn's disparate treatment claims should be dismissed because she has failed to allege she was performing her job satisfactorily and failed to allege facts indicating Twitter treated her differently than similarly situated employees. As described above, these arguments are belied by the complaint, which contains such allegations. Twitter suggests that Frederick-Osborn's allegations regarding her job performance are inadequate, but the Ninth Circuit has confirmed that a plaintiff need not present detailed allegations regarding job performance to state a prima facie discrimination claim in a complaint. Sheppard, 694 F.3d at 1049–50 (concluding that plaintiff's "two-and-one-half page complaint, while brief, nonetheless satisfies Rule 8(a)(2)'s pleading standard" and that plaintiff plausibly stated a claim of age discrimination under the ADEA where she "alleges that she was over forty and 'received consistently good performance reviews'"); see also Loza v. Intel Americas, Inc., 2020 WL 7625480, at *3 (N.D. Cal. Dec. 22, 2020) (denying motion to dismiss ADEA claim where plaintiff alleged he "was a hard-working employee who diligently performed and excelled" at his job); Hamm v. Nielsen, 2019 WL 6499209, at *12 (C.D. Cal. July 30, 2019) (plaintiff "clearly pleaded" element of prima facie ADEA claim by alleging that "his job performance was always 'outstanding'"); Haro v. Therm-X of California, Inc., 2015 WL 5121251, at *4 (N.D. Cal. Aug. 28, 2015) (plaintiff's allegation that he "performed his job satisfactorily" sufficient to state prima facie discrimination claim even if allegation "is somewhat conclusory").

Twitter also dismisses the probative value of Frederick-Osborn's statistical analysis, and points to other anecdotal evidence that might ultimately be relevant to proving her claims, but

these arguments "disregard[] the proce[]dural posture of the case: plaintiffs need not prove every assertion to bring suit or to survive a Rule 12(b)(6) motion to dismiss." <u>Mi Pueblo San Jose, Inc. v. City of Oakland</u>, 2006 WL 2850016, at *4 (N.D. Cal. Oct. 4, 2006).[2] Moreover, while Twitter faults Frederick-Osborn for purportedly failing to provide sufficiently detailed descriptions of similarly situated employees who were treated more favorably than she was, courts in this Circuit have made clear that this kind of factual detail is unnecessary at this stage. <u>See</u>, <u>e.g.</u>, <u>Marziano v. Cty. of Marin</u>, 2010 WL 3895528, at *9 (N.D. Cal. Oct. 4, 2010) (confirming that "a general statement that similarly situated employees were treated more favorably . . . with respect to a specific employment action" is enough to survive a motion to dismiss); <u>Cooper v. Cate</u>, 2011 WL 5554321, at *11 (E.D. Cal. Nov. 15, 2011) (denying a motion to dismiss in an age discrimination case where plaintiff alleged only that the defendant "treated employees with [plaintiff's] rank and classification who were substantially younger than she more favorably that it treated her, including but not limited to, not redirecting them to out of class positions"); <u>Egbukichi v. Wells Fargo Bank, NA</u>, 2017 WL 1199737, at *4 (D. Or. Mar. 29, 2017) ("The Court also rejects Defendant's argument that Plaintiffs must specifically identify the purported similarly qualified white applicants at this stage of the litigation. Although potentially important at summary judgment or trial, the Court finds such specificity is not required in the complaint at the pleading stage.").

Finally, Twitter asks this Court to disregard Musk's discriminatory comments, arguing that these "few stray public statements from Musk . . . are not tied to the Post-RIF Policies." (Mot. to Dismiss, p. 10, L.11-12, Dkt. 13). But it is rational to conclude that "strongly held and repeatedly voiced wishes of the king, so to speak, likely became well known to those courtiers who might rid him of a bothersome underling." <u>Travers v. Flight Servs. & Sys., Inc.</u>, 737 F.3d

---

[2]    Twitter relies heavily on <u>Strifling v. Twitter, Inc.</u>, Case No. 22-cv-07739-JST, slip op. (N.D. Cal. May 8, 2023), for the proposition that Plaintiffs have not adequately pled sufficient facts. Given U.S. Supreme Court and Ninth Circuit precedent, Plaintiffs respectfully disagree with the <u>Strifling</u> decision. Nonetheless, should the Court agree that additional detailed factual allegations are required, the Court should allow Plaintiffs leave to file an amended complaint.

144, 147 (1st Cir. 2013) (reversing summary judgment on retaliation claim). At this stage, Frederick-Osborn need not prove her entire case. See Usher v. O'Reilly Automotive, Inc., 2014 WL 12597587, at *5 (C.D. Cal. May 27, 2014) (denying a motion to dismiss where employer argued that certain comments were "stray remarks" and explaining that "while the factual allegations may not show that the comments made to Plaintiff were 'directly tied' to Plaintiff's termination, '[c]omments suggesting that the employer may have considered impermissible factors are clearly relevant to a disparate treatment claim.") (quoting Horn v. Cushman & Wakefield Western, 72 Cal. App. 4th 798, 809–10 (1999)). As the new owner and CEO of Twitter, Musk "set[] the tone and mission for his subordinates, many of whom presumably consider it an important part of their jobs to figure out and deliver what the CEO wants." Travers, 737 F.3d at 147. It is certainly plausible that Musk's discriminatory animus influenced the hurried layoff decisions made by his subordinates operating under his direct supervision, and the decision to impose new policies and requirements (the substance of which came directly from Musk) designed to further extend those layoffs. Regardless, this allegation cannot be dismissed at the pleading stage: Musk's alleged discriminatory animus, and the extent to which it influenced the challenged policies and requirements, are fact issues to be developed during discovery and resolved at summary judgment or trial. Id. at 148.

**E.     Frederick-Osborn is not required to plead a pattern or practice of discrimination but, regardless, she has adequately pleaded such a pattern.**

Twitter argues that Frederick-Osborn's disparate treatment claims fail because she did not allege that Twitter engaged in a "pattern or practice" of discrimination. Twitter is correct that "[c]lass action plaintiffs may bring a claim for disparate treatment by alleging that the employer's conduct was part of a 'pattern or practice' of discriminatory treatment toward members of a protected class." Buchanan v. Tata Consultancy Services, Ltd., 2017 WL 6611653, at *11 (N.D. Cal. Dec. 27, 2017) (quoting Teamsters, 431 U.S. at 325).[3] However, Twitter is wrong to suggest that doing so is a prerequisite to surviving a motion to dismiss. Frederick-

---

[3]     Plaintiffs can also bring Teamsters pattern or practice claims for age discrimination under the ADEA. See, e.g., Heath v. Google LLC, 345 F. Supp. 3d 1152, 1168 (N.D. Cal. 2018).

Osborn is not required to plead her intent to pursue a disparate treatment claim under the
Teamsters pattern or practice framework or the McDonnell Douglas framework in the
Complaint. See Drevaleva v. Dep't of Veterans Affs., 835 F. App'x 221, 223 (9th Cir. 2020)
("Federal Rule of Civil Procedure 8(a), not the McDonnell Douglas framework, provides the
appropriate pleading standard for reviewing a Rule 12(b)(6) motion in an employment
discrimination action."); Serrano v. Cintas Corp., 699 F.3d 884, 897 (6th Cir. 2012)
("Swierkiewicz compels the conclusion that a plaintiff is not required to plead whether she
intends to employ the McDonnell Douglas or the Teamsters burden-shifting evidentiary
framework.") (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508–12 (2002)). Indeed,
plaintiffs are "not required to commit to one methodology of evidentiary proof to substantiate [an
inference of discrimination] in their complaint." Serrano, 699 F.3d at 898 (citing Swierkiewicz,
534 U.S. at 511-12). Requiring otherwise would be "premature" at the pleading stage. Pedreiera
v. Ky. Baptist Homes for Children, Inc., 579 F.3d 722, 728 (6th Cir. 2009); see also Costa v.
Desert Palace, Inc., 299 F.3d 838, 851 (9th Cir. 2002), aff'd, 539 U.S. 90 (2003) ("[N]o special
pleading or proof hurdles may be imposed on Title VII plaintiffs.").

Regardless, Frederick-Osborn has adequately alleged a pattern or practice of
discriminatory conduct by Twitter. To prevail on a pattern or practice claim, plaintiffs must
ultimately prove "that intentional discrimination was the defendant's 'standard operating
procedure' as opposed to an 'unusual practice.'" Buchanan, 2017 WL 6611653 at *12 (quoting
Teamsters, 431 U.S. at 336). "To carry their burden, plaintiffs must produce evidence giving rise
to a sufficient 'inference that employment decisions were based on an unlawful discriminatory
criterion.'" Id. (quoting Segar v. Smith, 738 F. 2d 1249, 1267 (D.C. Cir. 1984)). "Plaintiffs can
establish this inference through circumstantial evidence such as statistical disparities, documents,
and testimony from protected class members." Id. Even at the later stage of summary judgment,
"the proof necessary to establish a *prima facie* case of employment discrimination [under a
pattern or practice theory] is 'minimal.'" Id. (quoting Coleman v. Quaker Oats Co., 232 F.3d
1271, 1281 (9th Cir. 2000)); see also Doheny v. Int'l Bus. Machines, Corp., 2024 WL 382142, at

*7 (S.D.N.Y. Feb. 1, 2024) ("For a pattern-or-practice claim under the ADEA to survive a Rule 12(b)(6) motion, a plaintiff must plead facts plausibly supporting a minimal inference that [intentional age] discrimination was the company's standard operating procedure.") (cleaned up).

Frederick-Osborn alleges that, following Musk's purchase and takeover of Twitter, the company immediately undertook a round of layoffs disproportionately affecting female and older employees. Then, Twitter imposed new work requirements that rescinded preexisting policies and imposed extraordinary burdens on all remaining employees, and on female and older employees specifically. Shortly thereafter, Musk issued a company-wide ultimatum requiring employees to assent to these extreme demands within one day or be terminated. As a result, a disproportionate number of female and older employees were laid off. These allegations are sufficient to state a plausible claim that Twitter, in the aftermath of Musk's purchase of the company, engaged in a pattern and practice of discrimination. Compare Keys v. Humana, Inc., 684 F.3d 605 (6th Cir. 2012) (concluding that plaintiff plausible alleged pattern or practice claim where complaint "details several specific events . . . where [plaintiff] alleges she was treated differently than her Caucasian management counterparts; it identifies the key supervisors and other relevant persons by race and either name or company title; and it alleges that [plaintiff] and other African Americans received specific adverse employment actions notwithstanding satisfactory employment performances"); with Sengupta v. Morrison-Knudsen Co., 804 F.2d 1072, 1076 (9th Cir. 1986) (finding no pattern or practice of discrimination where data established that same percentage of minority and non-minority employees were laid off).

**F.      Frederick-Osborn has adequately pleaded sex and age discrimination claims under a disparate impact theory of liability.**

"[T]o prevail on a disparate impact claim . . . a plaintiff must prove that a challenged employment policy or practice, while facially neutral, has a disparate impact on certain employees 'because of their membership in a protected group.'" Katz v. Regents of the Univ. of California, 229 F.3d 831, 835 (9th Cir. 2000) (explaining standard applied to ADEA and FEHA claims); see also Thomas v. San Francisco Hous. Auth., 2017 WL 878064, at *4 (N.D. Cal. Mar.

6, 2017) (applying same standard in Title VII context). A plaintiff establishes a prima facie disparate impact claim if they "(1) show a significant disparate impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact." Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1190 (9th Cir. 2002). While "[p]laintiffs need not prove the prima facie elements to survive a motion to dismiss, [they] must plead the general elements to make a claim facially plausible." Lee v. Hertz Corp., 330 F.R.D. 557, 561 (N.D. Cal. 2019); see also Wilson v. Timec Servs. Co., Inc., 2023 WL 5753617, at *2 (E.D. Cal. Sept. 6, 2023) ("To state a disparate impact claim, plaintiffs must plausibly allege that an employment disparity exists with respect to the protected group."). As with disparate treatment claims, the burden on plaintiffs at the pleading stage is "not onerous," and "[t]he plaintiff must only make allegations sufficient to raise an inference or presumption of discrimination." Moussouris v. Microsoft Corp., 2016 WL 6037978, at *3 (W.D. Wash. Oct. 14, 2016).

Here, Frederick-Osborn has met her burden by plausibly alleging all elements of a prima facie disparate impact claim. First, Frederick-Osborn alleges that Twitter's initial round of mass layoffs affected women significantly more than men, and older employees more than younger employees. (Compl. ¶¶ 19-25, Dkt. 1). Then, as layoffs continued, Twitter imposed new job requirements and work conditions that were intended to further force out women and older Twitter employees. (Compl. ¶¶ 26-30, Dkt. 1). Finally, Twitter (through Musk) issued an ultimatum requiring workers to agree to these new job requirements and work conditions to remain at the company, which communicated the message that older and female workers were not welcome at Twitter and which led to the layoff of many remaining female and older employees. (Compl. ¶¶ 31-35, Dkt. 1). Frederick-Osborn identified the imposition of the unreasonable hours and in-office requirements as the "specific employment practice[s]" giving rise to her disparate impact claims. (Compl. Counts I-IV, Dkt. 1) And, as detailed above, Frederick-Osborn has alleged substantial supporting factual allegations, including a preliminary

statistical analysis and evidence of Musk's discriminatory animus, which amply support an inference of a causal relationship. (Compl. ¶¶ 32-41, Dkt. 1).

In response, Twitter again argues that Frederick-Osborn's disparate impact claim fails because her departure was "voluntary." As explained above, this argument is unavailing – it is a premature invitation to resolve a factual dispute that cannot be adjudicated at this stage of litigation.  It also ignores the fact that Plaintiff has alleged that Musk communicated an unreasonable ultimatum to employees with the express intent of using it to lay off more of Twitter's workforce.

Twitter's next argument, that Frederick-Osborn has failed to identify a "discernible employment practice for disparate impact purposes," fares no better. (Mot. to Dismiss, p. 12, L.9-11, Dkt. 13). As stated above, Frederick-Osborn identified the imposition of new policies and requirements demanding that Twitter employees work unreasonable hours from a physical Twitter office as the employment practices giving rise to her disparate impact claim. Twitter asserts that these actions "are too vague and generic to constitute a discernible employment practice," (Mot. to Dismiss, p. 12, L.10), but the cases Twitter relies upon do not support this proposition. In <u>Stout v. Potter</u>, the Ninth Circuit held that a challenge directed generally at an employer's "decision-making process" was insufficient – the plaintiffs needed to "instead identify the particular element or practice within the process that causes an adverse impact." 276 F.3d at 1124. Here, by contrast, Frederick-Osborn challenges Twitter's imposition of specific work policies and requirements which she alleges disparately impacted female and older workers. She also identifies Musk's demand that employees acquiesce to these new policies and working conditions within twenty-four hours. (Compl. ¶ 31, Dkt. 1). In <u>Stockwell v. City and County of San Francisco</u>, the Ninth Circuit was addressing a class certification motion, not a motion to dismiss, and the court said nothing about the imposition of work policies of the type alleged here. 749 F.3d 1107, 1114 (9th Cir. 2014). Twitter's demand for greater specificity is inconsistent with Rule 8 pleading requirements and "would essentially impose a heightened pleading standard upon [disparate impact] plaintiffs, even though the Supreme Court has

repeatedly instructed us not to impose such heightened standards in the absence of an explicit requirement in a statute or federal rule." Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 841 (9th Cir. 2007) (citing Swierkiewicz, 534 U.S. at 515).[4]

Twitter also contends that Frederick-Osborn's claims should be dismissed because the statistics she alleges regarding the disparate impact of the challenged employment practices on female employees are insufficiently detailed, and the complaint does not allege statistics documenting the impact on older workers. In advancing this argument, Twitter ignores that "[a]t the motion to dismiss stage, a complaint need not allege statistical data." United States v. Maricopa Cnty., Ariz., 915 F. Supp. 2d 1073, 1078 (D. Ariz. 2012). Indeed, "[a]t the motion to dismiss stage, 'there is no reason [a plaintiff] would have this kind of statistical evidence yet,'" because discovery has not yet commenced. Id. (quoting Mata v. Ill. State Police, 2001 WL 292804, at *4 (N.D.Ill. Mar. 22, 2001)); see also Jenkins v. New York City Transit Auth., 646 F. Supp. 2d 464, 469 (S.D.N.Y. 2009) ("To the extent the defendants' argument is that a plaintiff must provide statistical support for a disparate impact claim in order to survive a motion to dismiss, that argument is incorrect. It would be inappropriate to require a plaintiff to produce statistics to support her disparate impact claim before the plaintiff has had the benefit of discovery."). Frederick-Osborn has plausibly alleged that Twitter's imposition of new work policies and requirements had a disparate impact on female and older workers. She has supported those allegations with a preliminary statistical analysis of the impact of the challenged policies and requirements on female employees. See, e.g., Brown v. City of New York, 2017 WL 1102677, at *6 (E.D.N.Y. Mar. 23, 2017) ("[S]tatistics that may ultimately prove insufficient can nevertheless support a plausible inference of disparate impact on a motion to dismiss.");

---

[4]      See Zeman v. Twitter, Inc., 2023 WL 5599609, at *6 (N.D. Cal. Aug. 29, 2023) (allegations that Twitter had a policy of delegating employment decisions to subjective discretion of managers sufficiently identified facially neutral policy for disparate impact discrimination claim); Gamble v. Kaiser Foundation Health Plan, Inc., 348 F. Supp. 3d 1003, 1023 (N.D. Cal. 2018) (finding allegations of subjective policy for making various employment decisions, including hiring, compensation, promotions, and discipline to be sufficient for disparate impact race discrimination claim).

Menoken v. McGettigan, 273 F. Supp. 3d 188, 199 (D.D.C. 2017), aff'd sub nom. Menoken v. Pon, 2018 WL 2383278 (D.C. Cir. May 9, 2018) (denying motion to dismiss disparate impact claim where allegations were "barely sufficient to create an inference of causation" and explaining that "[the p]laintiff will now have to . . . come forward with the necessary statistical evidence"). At this early stage, she is not required to do more.

Finally, Twitter argues that Frederick-Osborn cannot state a disparate impact age discrimination claim because the ADEA "does not recognize a disparate impact claim predicated on disparities for a 'subgroup' of older workers who are age 50 or older." (Mot. to Dismiss, p. 16, ¶¶ 10-12, Dkt. 13). However, Judge Ilston recently rejected this exact argument by Twitter. See Zeman v. Twitter, Inc., 2023 WL 5599609, at *5 (N.D. Cal. Aug. 29, 2023). In so doing, Judge Ilston correctly noted that the ADEA's provisions regarding disparate treatment and disparate impact both prohibit discrimination because of any individual's age, and explained that "read[ing] the disparate treatment provision to prohibit discrimination based on a class of individuals aged forty and over rather than based on age would contradict both the plain language of the statute and the Supreme Court's holding in O'Connor [v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996)]." Id. Thus, she held that the plaintiff's ADEA disparate impact claim for a potential class of Twitter employees aged 50 and older was cognizable. Id.; see also Fox v. Bonneville Admin., 243 F.3d 547 (9th Cir. 2000) (unreported case) (stating that allegations in plaintiffs' class complaint that company's policy had a disparate impact on workers over 50 years old were sufficient to state a disparate impact claim); O'Brien v. Caterpillar, Inc., 900 F.3d 923, 929-30 (7th Cir. 2018) (recognizing potential disparate impact claims for a group of employees age 55 and older); Karlo v. Pittsburgh Glass Works, LLC, 849 F.3d 61, 70-81 (3rd Cir. 2017) (holding that age discrimination disparate impact claims are not limited to 40-and-older comparisons, and can be based on subgroups).[5] For these same reasons, this Court should deny Twitter's motion to dismiss Frederick-Osborn's disparate impact claims.

---

[5]     See also Cerjanic v. FCS USA, LLC, 2018 WL 3729063, at *5-6 (E.D. Mich. Aug. 6, 2018) (denying motion to dismiss disparate impact age discrimination claim for a group of

IV.     **CONCLUSION**

For the foregoing reasons, the Court should deny Twitter's Motion to Dismiss.


Respectfully submitted,


SYDNEY FREDERICK-OSBORN, on behalf of herself and all others similarly situated.


By her attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice forthcoming*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com; tfowler@llrlaw.com


Dated:          February 22, 2024

---

employees age 55 and older); <u>Mahler v. Judicial Counsel of Cal.</u>, 67 Cal.App.5th 82, 126 (2021) (finding that disparate impact age discrimination claims under California state law are not limited to forty-and-other comparisons); <u>Graffam v. Scott Paper Co.</u>, 848 F. Supp. 1, 3-5 (D. Maine 1994) (holding that a subgroup of employees age 50 and older was a proper statistical analysis to support a disparate impact age discrimination claim); <u>Finch v. Hercules, Inc.</u>, 865 F. 1104, 1129-30 (D. Del. 1994) (employee could seek to prove disparate impact age claims for subgroup of employees age 50 and older or age 55 and older).

## <u>CERTIFICATE OF SERVICE</u>

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on counsel for Defendant Twitter, Inc. and X Corp. via the CM/ECF system on February 22, 2024.


<u>/s/ Shannon Liss-Riordan</u>
Shannon Liss-Riordan

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT