MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
Roshni C. Kapoor, Bar No. 310612
roshni.kapoor@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Tel:     +1.415.442.1000
Fax:    +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Ashlee N. Cherry, Bar No. 312731
ashlee.cherry@morganlewis.com
Kassia Stephenson, Bar No. 336175
kassia.stephenson@morganlewis.com
1400 Page Mill Road
Palo Alto, CA  94304
Tel:     +1.650.843.4000
Fax:    +1.650.843.4001

Attorneys for Defendant
X CORP. f/k/a TWITTER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SYDNEY FREDERICK-OSBORN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TWITTER, INC. and X CORP.,<br><br>Defendants. | Case No. 3:24-CV-00125-JSC<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:      March 21, 2024<br>Time:     1:30 p.m.<br>Judge:    Hon. Jacqueline Scott Corley |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S
COMPLAINT
CASE NO. 3:24-CV-00125-JSC

# TABLE OF CONTENTS

Page

I. Introduction ........................................................................................................................... 1

II. Argument ............................................................................................................................... 1

    A. Plaintiff Fails to State a Claim for Disparate Treatment Based on Sex or Age. ...................................................................................................................... 1

        1. The Complaint Fails to Allege that Plaintiff Performed Her Job Satisfactorily or that X Treated Comparators Favorably. ........................... 1

        2. The Complaint Contains No Facts that Suggest Considerations of Sex or Age Motivated X's Decision to Implement the Policies that Allegedly Resulted in the Purported Constructive Discharge ..................... 4

        3. Plaintiff Does Not Allege Sex or Age Discrimination was a "Routine and Regular" Part of Twitter's Workplace and Thus Cannot State a Claim Under a Pattern or Practice Theory ......................... 6

        4. Musk's Stray Comments Fail to Support an Inference of Intentional Discrimination. .............................................................................................. 7

    B. Plaintiff Fails to State a Claim for Disparate Impact Discrimination Based on Sex or Age. ...................................................................................................... 8

        1. Plaintiff Does Not Target a Specific Policy. ............................................... 8

        2. Plaintiff Fails to Allege Causation. ............................................................. 9

        3. Plaintiff's Age "Subgroup" Claim Fails as a Matter of Law. ..................... 9

III. Conclusion ........................................................................................................................... 10

-i-

DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S
COMPLAINT
CASE NO. 3:24-CV-00125-JSC

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Achal v. Gate Gourmet, Inc.*,
   114 F. Supp. 3d 781 (N.D. Cal. July 14, 2015) .................................................................. 3

*Ali v. PayPal, Inc.*,
   2019 WL 11691431 (N.D. Cal. July 26, 2019), *aff'd*, 804 F. App'x 686 (9th
   Cir. 2020) ........................................................................................................................... 3

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................... 2, 3, 4

*Borja-Valdes v. City & Cnty. of San Francisco*,
   No. 3:14-CV-04168-CRB, 2015 WL 5522287 (N.D. Cal. Sept. 18, 2015) ...................... 4

*Brooks v. City of San Mateo*,
   229 F.3d at 930 .................................................................................................................. 5

*Connolly v. Remkes*,
   2014 WL 5473144 (N.D. Cal. Oct. 28, 2014) ................................................................... 5

*Diemert v. City of Seattle*,
   2023 WL 5530009 (W.D. Wash. Aug. 28, 2023) ............................................................. 5

*E.E.O.C. v. McDonnell Douglas Corp.*,
   191 F. 3d 948 (9th Cir. 1999) ...................................................................................... 4, 10

*Fox v. Bonneville Admin.*,
   243 F.3d 547 (9th Cir. 2000) ........................................................................................... 10

*Frank v. Potter*,
   1:08–CV–00595, 2009 WL 2982876 (S.D. Ohio Sept. 15, 2009) ..................................... 3

*Freeman v. Cnty. of Sacramento Dep't of Hum. Assistance*,
   2020 WL 2539268 (E.D. Cal. May 19, 2020) ................................................................... 4

*Fresquez v. County of Stanislaus*,
   2014 WL 1922560 (E.D. Cal. May 14, 2014) ................................................................... 2

*Gilligan v. Jamco Dev. Corp.*,
   108 F.3d 246 (9th Cir. 1997) ............................................................................................. 4

*Haney v. United Airlines, Inc.*,
   No. 15-CV-00474-VC, 2016 WL 80554 (N.D. Cal. Jan. 7, 2016) .................................... 4

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Hemming v. Tidyman's Inc.*,
  285 F.3d 1174 (9th Cir. 2002)...................................................................................... 8

*Int'l Bhd. Of Teamsters v. U.S.*,
  431 U.S. 324 (1977)...................................................................................................... 6

*Jeffrey v. Foster Wheeler LLC*,
  No. 14–CV–05585–WHO, 2015 WL 1004687 (N.D. Cal. Mar. 2, 2015).................. 4

*Keys v. Humana, Inc.*,
  684 F.3d 605 (6th Cir. 2012).................................................................................. 6, 7

*Lee v. Hertz Corp.*,
  330 F.R.D. 557 (N.D. Cal. Mar. 28, 2019) ............................................................ 3, 8

*Lindsey v. Claremont Middle Sch.*,
  No. C 12-02639 LB, 2012 WL 5988548 (N.D. Cal. Nov. 29, 2012)....................... 3

*Marziano v. Cnty. of Marin*,
  No. C-10-2740 EMC, 2010 WL 3895528 (N.D. Cal. Oct. 4, 2010)....................... 2

*Miller v. D.F. Zee's, Inc.*,
  31 F.Supp.2d 792 (D. Or. Nov. 25, 1998)................................................................ 6

*Mora v. U.S. Bank*,
  No. CV–15–02436–DDP, 2015 WL 4537218 (C.D. Cal. July 27, 2015)................ 4

*Moussouris v. Microsoft Corp.*,
  2016 WL 6037978 (W.D. Wash. Oct. 14, 2016) ..................................................... 8

*O'Connor v. Consol. Coin Caterers Corp.*,
  517 U.S. 308 (1996).................................................................................................. 10

*Poland v. Chertoff*,
  494 F.3d at 1184......................................................................................................... 5

*Rudwall v. Blackrock, Inc.*,
  2011 WL 767965 (N.D. Cal. Feb. 28, 2011)........................................................... 10

*Sablan v. A.B. Won Pat Int'l Airport Auth. Guam*,
  2010 WL 5148202 (D. Guam Dec. 9, 2010).......................................................... 4

*Sheppard v. David Evans & Assoc.*,
  694 F.3d 1045 (9th Cir. 2012)................................................................................... 3

-iii-    DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S
COMPLAINT
CASE NO. 3:24-CV-00125-JSC

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Sparks v. S. Kitsap Sch. Dist.*,
  No. 3:13–CV–05682–RBL, 2014 WL 1047217 (W.D. Wash. Mar. 18, 2014) ........................ 4

*Stockwell, Stockwell v. City & Cnty. of San Francisco*,
  749 F.3d 1107 (9th Cir. 2014) ............................................................................................... 8

*Stout v. Potter*,
  276 F.3d 1118 (9th Cir. 2002) ............................................................................................... 9

*Taylor v. Accredited Home Lenders, Inc.*,
  580 F.Supp.2d 1062 (S.D. Cal. Sept. 19, 2008) .................................................................... 4

*Travers v. Flight Servs. & Sys., Inc.*,
  737 F.3d 144 (1st Cir. 2013) ................................................................................................. 7

*Usher v. O'Reilly Auto., Inc.*,
  2014 WL 12597587 (C.D. Cal. May 27, 2014) ..................................................................... 7

*Vizcaino v. Areas USA, Inc.*,
  2015 WL 13573816 (C.D. Cal. Apr. 17, 2015) ..................................................................... 2

*Wards Cove Packing Co. v. Atonio*,
  490 U.S. 642 (1989) ............................................................................................................... 9

*Williams v. USW, AFL–CIO, Local 7697*,
  No. 1:09–cv–743, 2010 WL 909883 (S.D. Ohio Mar. 10, 2010) ........................................... 3

*Wilson v. Timec Servs. Co., Inc.*,
  2023 WL 5753617 (E.D. Cal. Sept. 6, 2023) ........................................................................ 8

*Zeman v. Twitter, Inc.*,
  2023 WL 5599609 (N.D. Cal. Aug. 29, 2023) ................................................................. 9, 10

*Zody v. Microsoft Corp.*,
  2012 WL 1747844 (N.D. Cal. May 16, 2012) ....................................................................... 6

**Statutes**

ADEA ............................................................................................................................................ 9, 10

FMLA ................................................................................................................................................. 5

**Rules**

Ninth Circuit Rule 36-3 .................................................................................................................... 10

## I. INTRODUCTION

Plaintiff's Opposition does not explain away her Complaint's pleading deficiencies. Plaintiff voluntarily resigned from X when she declined to click "yes" in response to Musk's November 16, 2022 email that presented employees with a choice of either remaining employed—and agreeing to "work[] long hours at high intensity" at a Twitter office—or resigning. Nothing in the Complaint suggests that these alleged policies approximated the kind of intolerable and outrageous conduct that may give rise to a constructive discharge. Although the Complaint makes conclusory assertions that Musk implemented the alleged policies in order to force women and older workers to resign, those conclusions are no substitute for factual allegations. At a more basic level, the Complaint does not even allege that Plaintiff was performing her job satisfactorily when X selected her for layoff, that X treated similarly situated male or younger employees more favorably than her, or any other facts that might support an inference of intentional discrimination. Her disparate treatment claim therefore fails.

Plaintiff's disparate impact claim fares no better. The alleged policies of working long hours from an X office are too vague to support a disparate impact claim. In addition, the percentages that Plaintiff offers in support of her "mass constructive discharge" theory do not support an inference of causation because those figures do not account for the innumerable reasons why the hundreds of female and older employees decided to leave the company.

At bottom, Plaintiff does not allege that she suffered an adverse employment action (she voluntarily resigned), nor does she allege facts sufficient to draw a plausible inference of sex-based or age-based discrimination on either a disparate treatment or disparate impact theory. The Court should grant X's motion and dismiss the Complaint in its entirety.

## II. ARGUMENT

### A. Plaintiff Fails to State a Claim for Disparate Treatment Based on Sex or Age.

#### 1. The Complaint Fails to Allege that Plaintiff Performed Her Job Satisfactorily or that X Treated Comparators Favorably.

Like the failed complaint in *Strifling*, Plaintiff's Complaint here is "devoid of basic information" about the nature and conditions of her employment that might support a plausible

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S
COMPLAINT
CASE NO. 3:24-CV-00125-JSC

disparate treatment claim based on her sex or age. *Strifling* Order[1] at 7; *see also* Mot. at 6:12-8:8.

For starters, the Complaint's conclusory assertion that Plaintiff "met the company's expectations" (Compl., ¶ 9) does not satisfy her burden of pleading facts that plausibly support that conclusion. Plaintiffs' Opposition fails to address X's authorities that establish this point. *See Vizcaino v. Areas USA, Inc.*, 2015 WL 13573816, at *4 (C.D. Cal. Apr. 17, 2015); *Fresquez v. County of Stanislaus,* 2014 WL 1922560, at *5 (E.D. Cal. May 14, 2014); *see also* ECF No. 24 RJN, Ex. 1 (*Strifling* Order at 7).

In addition, Plaintiff's disparate treatment claim fails because she alleges no facts about the comparative qualifications, job performance, or abilities of male or younger employees who worked in substantially similar positions and were not "constructively discharged." *See Strifling* Order at 7-8. Nor does she allege the genders or ages of the employees, if any, who worked in jobs similar to hers. *See generally* Compl. For her part, Plaintiff contends she should not be "fault[ed]" for failing to provide "detailed descriptions of similarly situated employees who were treated more favorably than she was" because courts in the Ninth Circuit have "made clear this kind of factual detail is unnecessary at this stage." Opp. at 13:6-9 (citing *Marziano v. Cnty. of Marin*, No. C-10-2740 EMC, 2010 WL 3895528, at *8 (N.D. Cal. Oct. 4, 2010)). While courts have found that a plaintiff need not "name names" at the pleading stage, that observation does not relieve Plaintiff of her burden to plead facts that plausibly suggest that X treated her differently than male and younger comparators, which requires more than a "naked assertion that similarly situated persons were treated more favorably." *Marziano*, 2010 WL 3895528, at *8.

The decisions that the *Marziano* court cited approvingly further illustrate the deficiency of Plaintiff's allegations here. *See id.* (citing *Williams v. USW, AFL–CIO, Local 7697*, No. 1:09–cv–743, 2010 WL 909883, *5 (S.D. Ohio Mar. 10, 2010) (finding claims failed under *Twombly* where plaintiff failed to allege, for example, that the defendant "treated similarly-situated non-Black employees who had pending grievances more favorably than Williams was treated" or that

---

[1] "*Strifling* Order" throughout refers to Exhibit 1 to X's Request for Judicial Notice in Support of Its Motion to Dismiss ("RJN") at ECF No. 24.

any of defendant's "officials made discriminatory statements," and that plaintiff's "conclusory" assertion that " 'younger workers are treated more favorably' " was "an insufficient 'formulaic recitation of the element[ ] of a cause of action'"), and *Frank v. Potter*, 1:08–CV–00595, 2009 WL 2982876 (S.D. Ohio Sept. 15, 2009) (concluding that "Plaintiff does more than proffer conclusory allegations that similarly-situated persons received different treatment"—she "identifies her supervisors whom she alleges engaged in discrimination" and the "specific actions they took" and "[s]he alleges that both men and employees of a different race, African–American, were treated differently")).

Here, like in *Williams* (where the claim failed), Plaintiff has alleged only naked assertions that male and younger employees were treated more favorably than Plaintiff.  Compl. ¶ 33.  And unlike in *Frank* (where the claim succeeded), Plaintiff fails to identify any supervisors whom she alleges "engaged in discrimination" and what "specific actions they took."

Faced with those shortcomings, Plaintiff attempts to dodge her pleading burden by noting that she is not required to plead every element of a prima facie case at the pleading stage.  Opp. at 10:21-22.  While it is true that a complaint need not *prove* the plaintiff's prima facie case, the elements of a prima facie case do need to be plausibly alleged through non-conclusory factual allegations.[2]  *See Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012) (finding that "[t]o establish a prima facie case of discrimination, a plaintiff must allege in her complaint" the prima facie elements of the claim); *Lindsey v. Claremont Middle Sch.*, No. C 12-02639 LB, 2012 WL 5988548, at *2 (N.D. Cal. Nov. 29, 2012) ("[E]ven though [plaintiff] does not need to establish *prima facie* cases for his or her claims at [the pleading stage], the court will look to the required elements to determine whether the facts that are alleged state plausible claims for relief.").[3]

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[3] *See also, e.g.*, *Ali v. PayPal, Inc.*, 2019 WL 11691431, at *6 (N.D. Cal. July 26, 2019), *aff'd*, 804 F. App'x 686 (9th Cir. 2020) ("[T]he elements of a prima facie case are helpful in determining whether a plaintiff has alleged sufficient facts to state a plausible claim for relief); *Lee v. Hertz Corp.*, 330 F.R.D. 557, 561 (N.D. Cal. Mar. 28, 2019) (although plaintiffs "need not prove the prima facie elements to survive a motion to dismiss," they "must plead the general elements to make a claim facially plausible"); *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 793, 796–97 (N.D. Cal. July 14, 2015) (stating complaint must "contain either direct or inferential

1  Plaintiff's own authorities prove the same point.[4]  Accordingly, Plaintiff's claims for disparate

2  treatment on the basis of sex and age fail.

   **2.   The Complaint Contains No Facts that Suggest Considerations of Sex or Age Motivated X's Decision to Implement the Policies that Allegedly Resulted in the Purported Constructive Discharge.**

   Plaintiff voluntarily resigned by declining to click "yes" in response to Musk's November 16, 2022 email that presented employees with a choice of either remaining employed (and agreeing to "work[] long hours at high intensity") or resigning.  Compl., ¶¶ 31-32.  Although Plaintiff asserts that being offered this choice constituted a constructive discharge, the Complaint contains no allegations that support this conclusion, let alone a conclusion that age or sex animus informed X's decision to implement the alleged policies.  *See* Mot. at 13:22-14:27 (citing *Brooks v. City of San Mateo*, 229 F.3d at 930; *see also Poland v. Chertoff*, 494 F.3d at 1184).

---

allegations respecting all the material elements necessary to sustain recovery" and that courts "look to those [prima facie] elements to analyze a motion to dismiss" to decide plausibility"); *Freeman v. Cnty. of Sacramento Dep't of Hum. Assistance,* 2020 WL 2539268, at *2 (E.D. Cal. May 19, 2020) ("[C]ourts look to the prima facie elements [of a claim] to analyze a motion to dismiss" under the plausibility standard); *Sablan v. A.B. Won Pat Int'l Airport Auth. Guam*, 2010 WL 5148202, at *4 (D. Guam Dec. 9, 2010) (concluding "district courts in the Ninth Circuit" take the position that the "elements of a prima facie case . . . are . . . relevant to the court's analysis of the sufficiency of the complaint").

[4] Plaintiff cites to *Haney* to argue that she "need not plead a <u>McDonnell Douglas</u> prima facie case . . . to survive a motion to dismiss."  Opp. at 10:22-25 (citing *Haney v. United Airlines, Inc.*, No. 15-CV-00474-VC, 2016 WL 80554, at *1 (N.D. Cal. Jan. 7, 2016)).  However, *Haney* cites to *Borja-Valdes* in support of this position, and *Borja-Valdes* explains that this reasoning stems from a Ninth Circuit decision that was decided <u>before</u> *Twombly* and *Iqbal*.  *See Borja-Valdes v. City & Cnty. of San Francisco*, No. 3:14-CV-04168-CRB, 2015 WL 5522287, at *8, n.5 (N.D. Cal. Sept. 18, 2015) (citing *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Since *Twombly* and *Iqbal*, several district courts—including courts in the Northern District of California—have treated *Gilligan* as "implicitly overruled." *Id.*; *Jeffrey v. Foster Wheeler LLC,* No. 14–CV–05585–WHO, 2015 WL 1004687, at *1 (N.D. Cal. Mar. 2, 2015) (finding that "*Gilligan* does not save plaintiffs' complaint" because "*Gilligan* was decided years before *Iqbal* and *Twombly* and does not control over the pleading standards articulated in those cases); *Mora v. U.S. Bank,* No. CV–15–02436–DDP (AJWx), 2015 WL 4537218, at *7 n.3 (C.D. Cal. July 27, 2015); *see also Taylor v. Accredited Home Lenders, Inc.,* 580 F.Supp.2d 1062, 1068 (S.D. Cal. Sept. 19, 2008) (interpreting *Gilligan* to mean that the plaintiff need not ***prove*** a prima facie case, but must still ***plead*** the general disparate impact elements); *Sparks v. S. Kitsap Sch. Dist.,* No. 3:13–CV–05682–RBL, 2014 WL 1047217, at *3 (W.D. Wash. Mar. 18, 2014) (finding that *Gilligan* was "decided years before *Iqbal* and *Twombly* and [is] entirely inapplicable now.").

According to Plaintiff, X's position is that "every employee must resign from a company for any employee to bring a plausible constructive discharge claim." Opp at 14:21-22. But that is false and an obvious straw man. The point is simply that the plausibility analysis must be conducted in full view of the fact that thousands of employees did not decline to click "yes" and therefore continued (and to this day continue) their employment with X, which indicates that the work conditions were not "intolerable" or so "outrageous and egregious" that a reasonable person would not continue to work at X. *See Brooks*, 229 F.3d 917 at 930; *see also Poland*, 494 F.3d 1174 at 1184 (explaining that the constructive discharge doctrine sets a "high bar" that is met only when "working conditions become so intolerable that a reasonable person in the employee's positions would have felt compelled to resign") (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004)); *Connolly v. Remkes*, 2014 WL 5473144, at *9 (N.D. Cal. Oct. 28, 2014) ("[A]n employee cannot simply 'quit and sue,' . . . for '[t]he proper focus is on whether the resignation was coerced, not whether it was simply one rational option for the employee.'").

Plaintiff goes on to argue that "numerous actions contribut[ed] to a massive deterioration in the workplace environment." Opp at 14:22-23. The Court should reject this rhetorical gloss on the Complaint. Plaintiff alleges only that X expected employees to be "extremely hardcore" and to "work[] long hours at high intensity" in the office and not from home. Compl. ¶¶ 27, 34. Those allegations do not come close to supporting an inference of "intolerable" or "extraordinary and egregious" working conditions. Thus, Plaintiff has failed to allege constructive discharge as to herself, let alone a mass constructive discharge on behalf of hundreds of employees. *See Brooks*, 229 F.3d at 930; *Poland*, 494 F.3d at 1184; *Connolly*, 2014 WL 5473144, at *9.

Further, the three cases that Plaintiff cites are far different from the alleged facts here because those cases involved courses of conduct that amounted to egregious behavior. *See Diemert v. City of Seattle*, 2023 WL 5530009, at *5 (W.D. Wash. Aug. 28, 2023) (allegations involved "less favorable treatment in work/project assignments, hours, and promotions; failure to address his genuine concerns; creating a confidential file about him; subjecting him to increased scrutiny; interfering with his FMLA rights; coercing him into stepping down out of a lead

5

DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S
COMPLAINT
CASE NO. 3:24-CV-00125-JSC

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  position because of his race; denying him back pay for out-of-class work but requiring him to
2  complete this type of work anyway; and forcing him to continue reporting to the supervisor that
3  had physically accosted him") (citation omitted); *Zody v. Microsoft Corp.,* 2012 WL 1747844, at
4  *5 (N.D. Cal. May 16, 2012) (allegations involved manager making "gender-based assumptions,
5  demeaning [p]laintiff and acting condescending in both private and public settings, criticizing her,
6  inappropriately touching her, dismissing [p]laintiff's contributions, and communicating with her
7  in a rude and abrupt manner"); *Miller v. D.F. Zee's, Inc.,* 31 F.Supp.2d 792, 804 (D. Or. Nov. 25,
8  1998) (allegations involved "a series of unwelcome sexual jokes, sexual conduct and remarks ...
9  assigning her extra side work, denying her additional hours of work, and yelling and screaming at
10 her in an abusive manner ... repeated comments from busboys who called her 'baby,' told her
11 they loved her, and made other comments.").

> **3.  Plaintiff Does Not Allege Sex or Age Discrimination was a "Routine and Regular" Part of Twitter's Workplace and Thus Cannot State a Claim Under a Pattern or Practice Theory.**

Plaintiff fails to state a "pattern or practice claim" under the *Teamsters* framework because her Complaint does not plausibly suggest that discrimination is X's "standard operating procedure," meaning "the regular rather than the unusual practice" at X. *See Int'l Bhd. Of Teamsters v. U.S.*, 431 U.S. 324, 336 (1977). Indeed, Plaintiff offers no meaningful statistics or anecdotal allegations to support a plausible inference of a pattern or practice of discrimination. Mot. at 8:9-11:16; 14:20-16:5; *Strifling* Order at 10.

In response, Plaintiff doubles down on her contention that her burden is "minimal." Opp. at. 15:25-16:3. But she does not grapple with X's authorities. She appears to suggest that the Sixth Circuit's opinion in *Keys* supports her theory. *See* Opp. at 16:12-19. It does not. The complaint in *Keys* "detail[ed] several specific events in each of th[e] employment-action categories [*i.e.*, hiring, compensation, promotion, discipline, and termination] where [plaintiff] allege[d] she was treated differently than her Caucasian management counterparts; it identifie[d] the key supervisors and other relevant persons by race and either name or company title; and it allege[d] that [plaintiff] and other African Americans received specific adverse employment

actions notwithstanding satisfactory employment performances." *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012). By contrast, Plaintiff's Complaint does not identify a single decision-maker by name, title, department, gender, or otherwise; nor does she allege any non-conclusory facts to suggest a single manager somehow channeled Musk's purported gender or age animus.

### 4. Musk's Stray Comments Fail to Support an Inference of Intentional Discrimination.

Plaintiff cannot state a disparate treatment claim based on stray comments by Musk that are wholly disconnected from her separation and employment at X generally. Plaintiff asserts that two cases—*Usher* and *Travers*—support drawing an inference of intentional age discrimination based on Musk's conduct. *See* Opp. at 14:2-11. Plaintiff is wrong. In *Usher*, the plaintiff alleged his direct supervisors and managers "repeatedly" made disparaging age-related comments to him, that age harassment was an "everyday occurrence," and that a manager told him that leadership intentionally changed his job schedule "in hopes that [he] would quit voluntarily due to his age." *Usher v. O'Reilly Auto., Inc.*, 2014 WL 12597587, at *1 (C.D. Cal. May 27, 2014). By contrast, Plaintiff does not allege that any manager made disparaging comments about her sex or age, that any putative discriminatory conduct was repeated, or that any manager targeted her on the basis of a protected category.

Plaintiff asserts that Musk "set[] the tone and mission for his subordinates" and then cites *Travers*, a case in which the CEO made "express directives" to the plaintiff's supervisor to "get rid of [plaintiff]" and "talk [plaintiff] into dropping the lawsuit." *Travers v. Flight Servs. & Sys., Inc.*, 737 F.3d 144, 145, 147 (1st Cir. 2013). But this comparison to *Travers* is gratuitous argument. The Complaint contains no non-conclusory allegation that suggests Musk directed his subordinates or even "set the tone" for any separations, let alone gave sex- or age-discriminatory directives. In short, Plaintiff's Complaint fails to plausibly allege that X intentionally discriminated against her or anyone else on the basis of sex or age.

**B.     Plaintiff Fails to State a Claim for Disparate Impact Discrimination Based on Sex or Age.**

**1.     Plaintiff Does Not Target a Specific Policy.**

As X's moving papers explained, the alleged Post-RIF Policies that required long hours and intense work at a Twitter office are too vague and generic to constitute a discernible employment practice for purposes of a disparate impact claim. Mot. at 12:9-23 (citing *Stout v. Potter*, 276 F.3d 1118, 1121-22 (9th Cir. 2002); *Stockwell*, *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1114 (9th Cir. 2014). For her part, Plaintiff contends that her Complaint adequately isolates and identifies a specific employment practice. *See* Opp. at 17:5-13. But her authorities do not support that conclusion. *See, e.g., Hemming v. Tidyman's Inc.*, 285 F.3d 1174, 1190 (9th Cir. 2002) (targeting "subjective processes for awarding promotions, benefits, and salaries" where plaintiffs set forth statistical conclusions and "anecdotal testimony by multiple witnesses"); *Lee v. Hertz Corp.*, 330 F.R.D. 557, 561 (N.D. Cal. Mar. 28, 2019) (targeting defendants' background check screening where plaintiffs averred "Latinos were arrested and convicted of crimes at more than double the rates of whites during the period in question" and the policy "disqualif[ied] any applicant with a history of conviction or a prosecution pending for a crime, felony or misdemeanor involving assault, violence, sale of controlled substances or theft") (quotations and alterations omitted); *Wilson v. Timec Servs. Co., Inc.*, 2023 WL 5753617, *2 (E.D. Cal. Sept. 6, 2023) (dismissing discrimination claims where plaintiffs "challenge[d] defendants' facially neutral drug-testing policies yet [] made no allegation that defendants had discriminatory intent"); *Moussouris v. Microsoft Corp.*, 2016 WL 6037978, at *3 (W.D. Wash. Oct. 14, 2016) (targeting "not just how Microsoft's performance evaluation system functions, but also how that system allegedly disparately impacts women's performance evaluations, compensation, and promotion") (citation omitted).

### 2. Plaintiff Fails to Allege Causation.

Plaintiff fails to plead causation for either of the Post-RIF Policies. The Complaint pleads no statistics or comparative figures whatsoever to support an age-based disparate impact claim, so the age claim does not get out of the starting gate. Regarding her sex-based claim, the two percentages that the Complaint reports (*i.e.*, female vs. male departures) are simply bottom-line figures that the Complaint does not tie to either policy. In response, Plaintiff asserts that statistics at the pleading stage may be preliminary if they are needed at all. *See* Opp. at 19:4-20:5. But that misses the point. The problem is that she does not and cannot allege facts that tie her putative gender-based separation statistics to the challenged policies because the separations were voluntary (and her "mass constructive discharge" theory is unsupported, as explained above). *See Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989); *Stout*, 276 F.3d at 1121-22. Her bottom-line percentage therefore fails to support an inference of causation because it masks the countless individualized and subjective decisions by employees about whether they wanted to continue to work for X.[5] Plaintiff cites no disparate impact authority that suggests otherwise. *See* Opp. at 19:4-20:5. And without the bottom-line gender statistic, Plaintiff is left with no allegation whatsoever that might support an inference of causation.

### 3. Plaintiff's Age "Subgroup" Claim Fails as a Matter of Law.

The ADEA protects employees who are over 40. It does not recognize a disparate impact claim on behalf of a "subgroup" of employees aged 50 or older because that would "require an employer engaging in a RIF to attempt what might well be impossible: to achieve statistical parity among the virtually infinite number of age subgroups in its work force." *See* Mot. at 16:10-18 (citing *E.E.O.C. v. McDonnell Douglas Corp.,* 191 F. 3d 948, 951 (9th Cir. 1999).

---

[5] For instance, the Complaint does not identify the percentages of male and female employees who left the company because they did not want to work long hours at high intensity, the percentages who left because they wanted to work remotely rather than at a Twitter office, the percentages who left for both reasons, or the percentages who left due to reasons completely unrelated to the policies. *See* Mot. at 12:11-23.

In Opposition, Plaintiff cites the ruling in *Zeman* that the ADEA recognizes "subgroup" disparate impact claims. *See* Opp. at 20:9-17 (citing *Zeman v. Twitter, Inc.*, 2023 WL 5599609, at *5 (N.D. Cal. Aug. 29, 2023)). Respectfully, the conclusion in *Zeman* is legal error. The *Zeman* decision is at odds with the majority of appellate courts and district courts in this Circuit, and it embraces the minority view of the Third and Seventh Circuits. *See* Mot. at 16:10-17:8 (collecting authorities). The Third Circuit's analysis rests on the Supreme Court's holding in *O'Connor*, which recognized a disparate treatment claim (not a disparate impact claim) by an individual who was 56 years old and replaced with a 40-year-old because of his age. Opp. at 20:23-25 (citing *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 71 (3d Cir. 2017); *see also O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308 (1996). As the Eighth Circuit correctly recognized, however, *O'Connor*'s holding is limited to cases with discriminatory animus and does not "have any relevance to our analysis" for disparate impact. *McDonnell Douglas Corp.*, 191 F.3d 948 at 951; *see also*, *e.g.*, *Rudwall v. Blackrock, Inc.*, 2011 WL 767965, at *11 (N.D. Cal. Feb. 28, 2011) (recognizing that disparate impact "focus" on the entire "protected group" "[d]oes not leave older workers unprotected" because discrimination within the protected group can be redressed through disparate treatment claims).[6] This Court should follow the weight of authority, and find that Plaintiff's sub-group disparate impact claim fails as a matter of law.

### III. CONCLUSION

For the reasons discussed above, the Court should grant Defendant's Motion to Dismiss the Complaint in its entirety.

---

[6] Other than the *Zeman* decision, Plaintiff has provided no authority from the Northern District, or from any district within this Circuit, that recognizes an ADEA subgroup disparate impact claim. While Plaintiff cites *Fox,* an "unpublished disposition" from the Ninth Circuit in 2000, the case does not assist her even if it had precedential value, which it does not, because *Fox* did not address the subgroup issue. Opp. at 20:19-21; *Fox v. Bonneville Admin.*, 243 F.3d 547 (9th Cir. 2000); Ninth Circuit Rule 36-3 (stating "[u]npublished dispositions and orders of this Court issued before January 1, 2007 **may not be cited**" except for limited circumstances not present here (emphasis added)).

| | |
|---|---|
| Dated: February 29, 2024 | MORGAN, LEWIS & BOCKIUS LLP |
| | By  */s/ Brian D. Berry* |
| | Eric Meckley |
| | Brian D. Berry |
| | Roshni C. Kapoor |
| | Ashlee N. Cherry |
| | Kassia Stephenson |
| | Attorneys for Defendant |
| | X CORP. f/k/a TWITTER, INC. |